[Crim. No. 4179.   Second Dist., Div. One.   Mar. 2, 1948.]

THE PEOPLE, Respondent, v. JOSEPH JACOB WEBER, Appellant.

Paul E. Tapley for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

THE COURT.—Defendant was adjudged guilty by the court, a jury having been duly waived. Defendant was charged by information in the juvenile court with contributing to the delinquency of minors, an alleged violation of section 702 of ''Welfare and Institutions Code'' in that defendant, on or about February 5, 1947, ''did willfully and unlawfully encourage and permit certain minors, to-wit, Edwin J. Willard, Delores Lane, Dorothy Legg and Timothy West, minor persons under the age of twenty-one years, to-wit, of the ages of 17, 16, 16 and 17 respectively, to use and occupy a barn containing a quantity of hay and located on the southwest corner of Pioneer and Center Streets, Norwalk, for the purpose of committing sexual intercourse.''

The information was filed April 30, 1947; the trial was had on June 2, 1947.

The record reveals that the defendant's mother and father were the owners of and operated a small restaurant or lunch counter in the town of Norwalk; they also sold hay. Their son is the defendant who is 20 years of age.

The defendant testified:

"Q. How long have you been working in the restaurant there? A. Ever since I was a little boy.

"Q. Practically all your life? A. I lived there all my life, and I was gone for a little over two years, I was in the Navy, and I come back and started helping my parents again."

The alleged offense occurred in the restaurant. On the afternoon of the day in question, about 3:30 p. m., three boys and three girls were at the restaurant lunch counter, their ages ranging from 16 to 18 years. The evidence, taking into consideration the conclusions of the witnesses and replies to questions that called for hearsay, reveals that the three boys were lamenting the fact that they had no "car." One of them testified, referring to the conversation among them,

"A. Well, I said if we had a car we could take the girls out and 'make' them in the car.

"THE COURT: 'And "make" them in the car'? A. Yes, sir.

"Q. By MR. RITZI (Deputy District Attorney): Was the defendant, Joe Weber, in the cafe at this time? A. I believe so.

"Q. While you were having this conversation was he near by in the same room, or what? A. Well, yes, he was in the same room, but he was, I'd say, two feet, three feet from us.

"Q. Did Joe Weber say anything as you were having this conversation? A. I can't remember.

"Q. Did you ask Joe Weber as to whether or not you could use the barn? A. I believe I stated something like that.

"Q. What do you mean, you stated something like that? Did you ask him? A. Yes, I did.

"Q. What did he say? A. I don't know whether he understood me or not, but he says something about, 'I guess it will be all right.'

"THE COURT: What did you say to him, young man? A. I said could we use the barn, I asked him if we could use the barn, and he said something like he didn't care, or something like that."

As an example of one of the questions that called for hearsay, the record reveals the following:

"THE COURT: Yes, what was said at that time. Just give us the conversation, whatever was said by any one present. You just tell us what was said there, young man."

And another one by the court referring to what took place in the barn:

"THE COURT: Young man you just tell me what you were doing there and what you saw and what the other people were doing and what they saw."

The defendant's account of the foregoing is as follows:

"Well, one of them said—he said something about he wanted—wished he had a car, and didn't know where to go, and wanted to 'make' the girls, or something like that; that is, that's after he asked me if the barn was open or not. I just took it as a jest from one of the boys; they all joke around; I didn't know whether to take him seriously or not. I don't take any of them seriously.

"Q. Did you talk to them any further? A. No."

The conclusion of the defendant's testimony is as follows:

"THE COURT: I will ask this last question. Mr. Weber, do you sell liquor at this restaurant that you own?

"THE DEFENDANT: No; we are too close to the high school to have a liquor license.

"THE COURT: You come within that provision of the law.

"The Court finds the defendant to be guilty of the offense of contributing to the delinquency of a minor as set forth in the information.

"MR. HENRY: May we ask leave at this time, your Honor, to file a petition for probation?

"THE COURT: Yes, I want you to file an application. I want to go into this matter very carefully."

Based on the foregoing, which is the substance of the record, the defendant was adjudged guilty and sentenced to one year in the county jail.

When the defendant appeared for sentence, the court commented as follows:

"The violation which occurred out there, and series of violations which have occurred, Mr. Weber, are unjustifiable. You participated not only in the commission of these acts, but you could well have been charged with a felony. Every one of the times these men went out there and had intercourse with these girls they were guilty of the offense of rape, and you aided and abetted and assisted."

█ Incidentally, the first question on cross-examination of the defendant was as follows:

"By MR. RITZI: "Q. Joe, this Weber's Cafe is off bounds as far as the school is concerned, isn't it?"

. An objection to the question as improper cross-examination was sustained. Not only was the question highly improper but prejudicial. And in the presence of a jury would have, in all probability, been reversible error.

■ The defendant's contention on appeal that the evidence is insufficient to support the judgment must be upheld.

Section 702 of the Welfare and Institutions Code provides, "Any person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of twenty-one years to come within the provisions of any of the subdivisions of section 700 or which act or omission contributes thereto, or any person who, by any act or omission, or by threats, commands, or persuasion, induces or endeavors to induce any person under the age of twenty-one years to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend to cause any such person to become or to remain a person within the provisions of any of the subdivisions of section 700, is guilty of a misdemeanor. . . ." Obviously there was no "duty" on the part of defendant to take any action whatever, in the circumstances. Nor does the evidence disclose any "act" committed by defendant that caused or encouraged anyone to "come within the provisions of any of the subdivisions of section 700." Nor does the evidence reveal any conduct whatsoever on the part of the defendant that amounted to, "threats, commands, or persuasion, induces or endeavors to induce any person," to do anything.

It should be emphasized that all crimes are against the state and no citizen except those officials charged with the duty so to do, is required to take any affirmative action to prevent the commission of a public offense. The court's statement, therefore, above noted, that the defendant "aided and abetted and assisted" in the commission of the offense is without legal sanction. There was nothing in the evidence and there is nothing in the law that supports such a conclusion.

■ It is well settled that aiding and abetting the commission of a crime require some affirmative action. The mere knowledge or belief that a crime is being committed or likely to be committed, and the failure on the part of the one having such knowledge or belief to take some steps to prevent it, in no sense amounts to aiding and abetting. The foregoing is not to be understood as suggesting or even

intimating that defendant had any such knowledge or belief. On the contrary, to attribute such a state of mind to the defendant in the light of the extraordinary proposal of the three boys would, in itself, do an injustice to defendant's character that the evidence by no means justifies. But, if there were any such doubt, the presumption of innocence would be sufficient to overcome it in the circumstances.

The administration of justice has always demanded a fair and impartial trial under the law, which includes the pronouncing of judgment thereon. A defendant in a criminal action cannot be punished for general conditions and thus be made the victim of a transient and miniature crusade.

The judgment is reversed with directions to discharge the defendant.

Respondent's petition for a hearing by the Supreme Court was denied March 30, 1948.