[Civ. No. 29878. Second Dist., Div. Two. Dec. 3, 1965.]

JOSEPH LAVINE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

[Civ. No. 29895. Second Dist., Div. Two. Dec. 3, 1965.]

HAROLD GENE POTTS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

(Consolidated Cases.)

Hugh R. Manes and George L. Vaughn, Jr., for Petitioners.

Evelle J. Younger, District Attorney, Harold J. Ackerman, Chief Deputy District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Respondent.

KATZ, J. pro tem.*— █ Petitioners seek writs of prohibition to restrain respondent court from taking further proceedings in the prosecution of petitioners on a murder charge on the ground that the indictment was found without reasonable or probable cause.

The transcript of the proceedings before the grand jury discloses that Donald E. Ludlow, a deputy sheriff, died on August 13, 1965, as a result of a shotgun wound. The fatal shot was fired accidentally by another deputy sheriff, William Buford Lauer, Jr., under circumstances hereafter recounted.

On August 12, the day preceding the shooting, Lauer had been on duty in the area referred to as the riot area which was bounded roughly on the north by Slauson Avenue, on the south by Rosecrans, on the east by Alameda, and on the west by Broadway. There were numerous acts of looting and fires of apparent incendiary origin in that area. Shots had been fired at police cars and bricks, bottles and other objects had been thrown at such cars, including the one in which Lauer was riding. Because of the extent of the violence, officers had been ordered to stay away from the housing project located near Imperial and Success.

On August 13, Lauer was again advised to stay away from the housing project and was instructed that civilians were to be kept out of that vicinity and that vehicular traffic was to be kept out or moving. Between 6:15 p.m. and 9 p.m., he pa-

---

*Assigned by the Chairman of the Judicial Council.

trolled the riot area in a radio car. He observed a crowd of 200 to 300 people in the vicinity of Imperial and Success and saw some of them throw rocks and "molotov cocktails" at passing cars. There were six overturned vehicles on Imperial and some of them were burning. Several liquor stores in the vicinity had windows broken out and had been stripped of merchandise. One liquor store and a food store were on fire. Lauer saw firemen attempting to put out fires but being forced to retreat when bricks and bottles were thrown and occasional shots fired at them. Numerous shots were fired by snipers in the area. Lauer also heard reports over the radio of burglaries, arsons, felonious assaults, including such assaults on law enforcement officers, and resistance to officers.

At about 9 p.m., Lauer was ordered to go to the southeast corner of Imperial and Wilmington to assist other officers with regard to a fire in a liquor store. On arrival at that location, he saw a small crowd on the west side of Wilmington north of Imperial. The street lights were all broken but the area was illuminated by the fire in the liquor store. Lauer attempted to clear the intersection of all vehicular traffic by advising motorists to leave the area. He observed a vehicle which had been westbound on Imperial stopped in the left lane about 50 feet from the intersection. There were three occupants in the vehicle who were talking amongst themselves. The three occupants were Negroes, later identified as Philip Brooks, who occupied the driver's seat, petitioner Joseph Lavine, who was seated on the passenger side in front, and petitioner Harold Potts, who occupied the right rear seat. From a distance of 20 to 30 feet, Lauer ordered the vehicle to leave the area. Although he didn't hear the occupants say anything, he saw that they were speaking and the vehicle did not move. Lauer repeated his order to get the car out of the area by shouting, "Get the hell out of there." He received no reply and the vehicle did not move. Lauer, who was dressed in full uniform, approached the driver's side of the vehicle at a slow walk. He held a shotgun in his hands with his finger on the trigger. He first stated that the gun was pointed "approximately parallel with the ground westbound on Imperial," but later indicated he held it at port arms, that is, approximately diagonally from shoulder down to the hip with muzzle pointed up. When he arrived at the vehicle, Lauer heard the occupants talking but couldn't make out what they were saying except for the opprobrious phrase "white ———." He first testified that he could not describe

the tone of voice as harsh, threatening or angry but later characterized it as a harsh statement. Lauer testified that as he was about to tell them to get out of the area, the driver, Brooks, reached up and ''put his hand over the top of the shotgun in the center portion of the gun.'' Brooks neither pushed the gun away nor pulled it toward himself but as he grasped the top of the shotgun, Lauer, being startled and thinking Brooks was trying to take the gun away from him or to disarm him, jumped and yanked backwards on the gun. Lauer immediately regained control of the gun as he yanked backwards and the gun discharged. Brooks did not pull the trigger and did not have his finger on it. Deputy Ludlow, whose presence was unknown to Lauer but who was standing about 10 feet behind and to the left of Lauer at an angle of about 45 degrees, was shot.

Neither petitioner actively participated in the shooting of Deputy Ludlow. Their complicity, if any, must therefore depend upon their status as conspirators or principals and be predicated upon vicarious liability for the acts and conduct of Brooks, the driver. The People contend that petitioners and Brooks were engaged in a conspiracy. The nature, objects or purposes of the alleged conspiracy are not clearly indicated in their argument. It appears, however, that it is contended that petitioners and Brooks conspired to commit murder, to disarm an officer, to riot, and to remain at the scene of a riot after being ordered to leave.

██ Although a conspiracy may be proved by circumstantial evidence, there must be some evidence from which the unlawful agreement can be inferred before criminal liability may be imposed on the basis of conspiracy. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49 [216 P.2d 859] ; *Greenberg* v. *Superior Court,* 19 Cal.2d 319 [121 P.2d 713] ; *Jensen* v. *Superior Court,* 96 Cal.App.2d 112 [214 P.2d 828].) ''Conspiracies cannot be established by suspicions. . . . Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense.'' (*Dong Haw* v. *Superior Court,* 81 Cal.App.2d 153, 158 [183 P.2d 724].) ██ In our opinion, there is no such evidence in the present case. The evidence shows at most that petitioners were present as passengers in an automobile driven by Brooks which was apparently illegally parked, that they engaged in conversation with him, the nature of which is unknown, and that they remained in the vehicle after Brooks had been ordered to move it. Petitioners did not par-

ticipate in Brooks' act or conduct with respect to the shotgun and there is no evidence that they knew such an act or conduct was to take place. They did not have control over movement of the automobile. To uphold the indictment against petitioners upon the theory of a conspiracy would be to sanction an indictment founded on mere speculation or conjecture. Considerable stress is laid in the argument of the People on the fact that petitioners were present in an area where many and varied unlawful acts had previously been committed by other persons and that petitioners resided some distance from that area. To infer the existence of a conspiracy from those facts would be to announce a theory even less supportable than that of guilt by association, or, as stated in *People* v. *Weber,* 84 Cal.App.2d 126, 131 [190 P.2d 46], to punish petitioners for ''general conditions.''

The People also contend that Deputy Ludlow was killed in the perpetration or attempt to perpetrate robbery and that petitioners aided and abetted the attempted robbery. Even if it be assumed that Brooks was guilty of attempted robbery in connection with the shotgun, and even if it be further assumed that he would be criminally liable for Ludlow's death under the felony-murder rule, there is no evidence that petitioners aided and abetted him in the assumed robbery attempt. ''It is well settled that aiding and abetting the commission of a crime require some affirmative action. The mere knowledge or belief that a crime is being committed or likely to be committed, and the failure on the part of the one having such knowledge or belief to take some steps to prevent it, in no sense amounts to aiding or abetting.'' (*People* v. *Weber, supra,* 84 Cal.App.2d 126, 130-131.) ''To be an abettor the accused must have instigated or advised the commission of the crime or been present for the purpose of assisting in its commission. He must share the criminal intent with which the crime was committed. The mere presence of the accused at the scene of the crime does not alone establish that the accused was an abettor.'' (*People* v. *Villa,* 156 Cal.App.2d 128, 133-134 [318 P.2d 828].)

In the present case, the evidence merely shows that petitioners were present at the scene of the alleged attempted robbery. The record is devoid of evidence that they in any way, directly or indirectly, assisted, advised or encouraged, Brooks or that they even had knowledge or belief that a robbery was likely to be committed or attempted.

Let peremptory writs issue as prayed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied December 16, 1965, and respondent's petition for a hearing by the Supreme Court was denied January 26, 1966.