[Civ. No. 29878.   Second Dist., Div. Two.   Jan. 24, 1966.]

PHILIP BENTLEY BROOKS, Petitioner, v. THE SUPE-
RIOR COURT OF LOS ANGELES COUNTY, Respond-
ent; THE PEOPLE, Real Party in Interest.

Kenneth R. Thomas for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harold J. Ackerman, Chief Deputy District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

ROTH, P. J.—Petitioner Philip Bentley Brooks seeks a writ of prohibition restraining respondent court from proceeding upon an indictment returned by the grand jury for murder in violation of Penal Code, section 187. Peremptory writs of prohibition have previously been issued by this court in favor of Joseph Lavine and Harold Gene Potts, who were indicted with petitioner Brooks (*Lavine* v. *Superior Court,* 238 Cal. App.2d 540 [48 Cal.Rptr. 8].)

The facts, as disclosed by the transcript of proceedings before the grand jury, are related in detail in the *Lavine* case. They may be summarized as follows:

Donald E. Ludlow, a deputy sheriff, died on August 13, 1965, as a result of a shotgun wound accidentally inflicted on that date by another deputy sheriff, William B. Lauer, Jr., Ludlow's partner.

In the days preceding and including August 13, 1965, violence had erupted in South Los Angeles in an area, commonly referred to by the community as the riot area, which was bounded roughly by Slauson Avenue on the north, on the south by Rosecrans, on the east by Alameda, and on the west by Broadway.

On August 12 and 13, Lauer had been on duty in the riot area and had witnessed or was otherwise aware of countless incidents of looting, arson, assaults on police with bricks, bottles and other objects, and similar assaults on firemen who were repeatedly called to the riot area to put out fires criminally started.

At or about 9 p.m. on August 13, Lauer was ordered to the southeast corner of Imperial and Wilmington to assist other officers with regard to a fire in a liquor store. On arrival at that location, he saw a small crowd on the west side of Wilmington, north of Imperial. Lauer attempted to clear the area of all vehicular traffic, and in doing so, he observed an automobile westbound on Imperial stopped in the left lane about 50 feet from the intersection. There were three occupants in the vehicle, talking amongst themselves. The occupants were Negroes, later identified as petitioner Brooks in the driver's seat, Joseph Lavine, in the front passenger seat, and Harold Potts, in the right rear seat.

Lauer, speaking from a distance of 20 or 30 feet, ordered

the vehicle to leave. When the car did not move, he shouted "Get the hell out of there," but again the vehicle did not move, nor did he receive a reply. At this point, Lauer, dressed in full uniform approached the vehicle on the driver's side at a slow walk, carrying his loaded shotgun at port arms with his finger on the trigger. When he reached the car, Lauer heard the occupants talking but was unable to make out what they were saying, except for the opprobrious phrase "white mother-fucker." Lauer then testified that just as he was going to again order them from the area, the driver, Brooks, reached up and "put his hand over the top of the shotgun in the center portion of the gun." Brooks neither pushed nor pulled the gun, but as he grasped it, Lauer, being startled and thinking Brooks was trying to disarm him, jumped and "yanked backwards on the gun." As he pulled the gun away, it discharged. Brooks did not pull the trigger and did not have his finger on it. Deputy Ludlow, whose presence was unknown to Lauer, was standing about 10 feet behind and to the left of Lauer, and was fatally shot.

The admitted facts demonstrate a most sensitive specific situation in an area in the throes of a widespread and explosive riot. Petitioner plainly saw a law enforcement officer in uniform carrying a loaded shotgun at port arms with his finger on the trigger, approaching him in the vehicle in which he had been seated, which vehicle he had been ordered to but did not move. Opprobrious language was plainly directed to the officer approaching them, which certainly did not indicate either good will or any desire to cooperate with the order which they had received or in any other respect. In these circumstances for petitioner to reach for the gun or to ". . . put his hand over the top . . ." was fraught with grave and inherent danger to human life. The record recounted does not permit this court to say there is not substantial evidence to support an indictment for murder.

In *People* v. *Gilbert,* 63 Cal.2d 690, the court says at page 704 [48 Cal.Rptr. 909, 408 P.2d 365]:

". . . 'Murder is the unlawful killing of a human being, with malice aforethought.' (Pen. Code, § 187). Such malice is implied under Penal Code section 188, when the defendant or his accomplice ' ''for a base, anti-social motive and with wanton disregard for human life, does an act which involves a high degree of probability that it will result in death'' '.''

*Greenberg* v. *Superior Court,* 19 Cal.2d 319 [121 P.2d 713] announces the rule that a writ of prohibition will lie

where an indictment "is unsupported by any evidence before the grand jury." (*Greenberg* v. *Superior Court, supra,* p. 322.) However, "If there is *some evidence* to support the indictment, the courts will not inquire into its sufficiency . . ." (*id.* at p. 322; italics added) and the cause should be determined by a trial on the merits. (See also, *Rogers* v. *Superior Court,* 46 Cal.2d 3, 7 [291 P.2d 929]; *Whitlock* v. *Superior Court,* 97 Cal.App.2d 26, 30 [217 P.2d 158]; *Callan* v. *Superior Court,* 204 Cal.App.2d 652, 662 [22 Cal.Rptr. 508].) It is not necessary that the evidence be strong enough to support a verdict of guilty to require a trial. (*Curtin* v. *Superior Court,* 83 Cal.App.2d 461, 466 [189 P.2d 288].)

▮ The record also shows that petitioner may have committed a felony murder.

The felony which Brooks might have committed is a violation of Penal Code, section 69, which provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding five thousand dollars, or by imprisonment in the state prison not exceeding five years or in a county jail not exceeding one year. . . ."

Brooks grasped the weapon of a deputy sheriff who was approaching him in the course of his duty. Full and fair examination with all available witnesses may reveal that Brooks was attempting to deter Lauer from performing his duty and that Brooks was acting in a threatening or violent manner within the meaning of Penal Code, section 69.

The extent to which the felony-murder doctrine will be applied in this state is uncertain. As we interpret it as of this writing it does apply to felonies inherently dangerous to human life.

It is clear that a violation of Penal Code, section 69 could be inherently dangerous to human life, its gravamen being threats, force and violence.

In *People* v. *Ford,* 60 Cal.2d 772, it was stated at page 795 [36 Cal.Rptr. 620, 388 P.2d 892]: "A homicide that is a direct causal result of the commission of a felony inherently dangerous to human life (other than the six felonies enumerated in Pen. Code, § 189) constitutes at least second degree murder. [Citations omitted.]" This rule has been constantly reiterated by the Supreme Court of this state (see *People* v.

*Schader*, 62 Cal.2d 716, 732 [44 Cal.Rptr. 193, 401 P.2d 665];
*People* v. *Washington*, 62 Cal.2d 777, 780-781 [44 Cal.Rptr.
442, 402 P.2d 130]; *People* v. *Williams*, 63 Cal.2d 452, 457
[47 Cal.Rptr. 7, 406 P.2d 647]).

We note that section 69 prescribes as a penalty a fine or
imprisonment in the county jail or imprisonment in the state
prison. It is therefore one of those sections which may be
either a felony or misdemeanor depending on the sentence
imposed. Penal Code, section 17 states: ''A felony is a crime
which is punishable with death or by imprisonment in the
state prison. Every other crime is a misdemeanor. When a
crime, punishable by imprisonment in the state prison, is also
punishable by fine or imprisonment in a county jail, in the
discretion of the court, it shall be deemed a misdemeanor for
all purposes *after a judgment imposing a punishment other
than imprisonment in the state prison. . . .*'' (Italics
added.) The language of the statute makes it clear that
where an offense is alternatively a felony or misdemeanor, it
is deemed a misdemeanor only ''after a judgment'' imposing
a misdemeanor sentence. The general rule is that prior to
judgment it is considered a felony for all purposes (*People* v.
*Banks*, 53 Cal.2d 370, 381 [1 Cal.Rptr. 669, 348 P.2d 102];
*People* v. *Williams*, 27 Cal.2d 220, 229 [163 P.2d 692];
*People* v. *Ramsey*, 202 Cal.App.2d 856, 860 [21 Cal.Rptr.
406]; *People* v. *Zaccaria*, 216 Cal.App.2d 787, 789 [31 Cal.
Rptr. 383]; 1 Witkin, Cal. Crimes (1963) p. 44) and will
support a conviction for felony murder (*People* v. *Finley*,
219 Cal.App.2d 330, 340-341 [33 Cal.Rptr. 31].)

The evidence, while insufficient in its present form to sup-
port a verdict, is nevertheless adequate to support the indict-
ment.

The indictment was properly returned, and the petition for
a writ of prohibition is denied.

Herndon, J., and Fleming, J., concurred.

Petitioner's application for a hearing by the Supreme Court
was denied March 22, 1966. Peters, J., Tobriner, J., and
Mosk, J., were of the opinion that the petition should be
granted.