[S.F. No. 22730. In Bank. Dec. 2, 1970.]

ALVIN TAYLOR, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

John D. Nunes, Public Defender, and Gordon Van Kessel, Assistant Public Defender, for Petitioner.

Robert L. Boags as Amicus Curiae on behalf of Petitioner.

Thomas C. Lynch, Attorney General, Arlo E. Smith, Chief Assistant Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Derald E. Granberg and James B. Cuneo, Deputy Attorneys General, for Respondent and for Real Party in Interest.

## OPINION

**BURKE, J.**—Petitioner and his codefendant Daniels were charged by information with the murder of John H. Smith, robbery, assault with a deadly weapon against Linda West, and assault with a deadly weapon against Jack West. The superior court denied petitioner's motion to set aside the infor-

mation as to the murder count (Pen. Code, § 995), and we issued an alternative writ of prohibition.

At the preliminary hearing, the following facts were adduced regarding the murder count: On the evening of January 12, 1969, two men attempted to rob Jax Liquor Store which was operated by Mrs. Linda Lee West and her husband Jack. Mrs. West testified that James Daniels entered the store first and asked Mr. West, who was behind the counter, for a package of cigarettes. While Mr. West was getting the cigarettes, John Smith entered the store and approached the counter. Mrs. West, who was on a ladder at the time the two men entered the store, then heard her husband say something about money. Turning her attention to the counter, she heard Daniels repeatedly saying, "Put the money in the bag," and observed her husband complying with the order.

While Mr. West was putting the money from the register in the bag, Daniels repeatedly referred to the fact that he and Smith were armed. According to Mrs. West, Daniels "chattered insanely" during this time, telling Mr. West "Put the money in the bag. Put the money in the bag. Put the money in the bag. Don't move or I'll blow your head off. He's got a gun. He's got a gun. Don't move or we'll have an execution right here. Get down on the floor. I said on your stomach, on your stomach." Throughout this period, Smith's gun was pointed at Mr. West. Mrs. West testified that Smith looked "intent" and "apprehensive" as if "waiting for something big to happen." She indicated that Smith's apparent apprehension and nervousness was manifested by the way he was staring at Mr. West.

While Daniels was forcing Mr. West to the floor, Mrs. West drew a pistol from under her clothing and fired at Smith, who was standing closest to her. Smith was struck on the right side of the chest. Mrs. West fired four more shots in rapid succession, and observed "sparks" coming from Smith's gun, which was pointed in her direction. A bullet hole was subsequently discovered in the wall behind the place Mrs. West had been standing, approximately eight or nine feet above the floor. During this period, Mr. West had seized a pistol and fired two shots at Smith. Mrs. West's last shot was fired at Daniels as he was going out of the door. He "lurched violently and almost went down, [but] picked himself up and kept going." Smith died as the result of multiple gunshot wounds.

The evidence at the preliminary examination indicated that petitioner was waiting outside the liquor store in a getaway car. He was apprehended later and connected with the crime through bills in his possession and through the automobile which was seen by a witness leaving the scene of the robbery.

Under Penal Code section 995, an information must be set aside if the

defendant has been committed without "reasonable or probable cause." ▮ Of course, the probable cause test is not identical with the test which controls a jury in a murder case. The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. (*Rideout* v. *Superior Court,* 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; *Jackson* v. *Superior Court,* 62 Cal.2d 521, 525-526 [42 Cal.Rptr. 838, 399 P.2d 374]; *Roads* v. *Superior Court,* 275 Cal.App.2d 593, 597 [80 Cal.Rptr. 169]; *People* v. *Stansbury,* 263 Cal. App.2d 499, 502 [69 Cal.Rptr. 827].) In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]" (*Rideout* v. *Superior Court, supra,* at p. 474.)

The information herein charged petitioner with the crime of murder. " 'Murder is the unlawful killing of a human being, with malice aforethought.' (Pen. Code, § 187.) ▮ Except when the common-law-felony-murder doctrine is applicable, an essential element of murder is an intent to kill or an intent with conscious disregard for life to commit acts likely to kill." (*People* v. *Washington,* 62 Cal.2d 777, 780 [44 Cal.Rptr. 442, 402 P.2d 130].) ▮ Petitioner correctly contends that he cannot be convicted under the felony-murder doctrine, since "When a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate robbery." (*People* v. *Washington, supra,* at p. 781.) However, apart from the felony-murder doctrine, petitioner could be found guilty of murder on a theory of vicarious liability.

▮ As stated in *People* v. *Gilbert,* 63 Cal.2d 690, 704-705 [47 Cal. Rptr. 909, 408 P.2d 365] (revd. on other grounds, 388 U.S. 263 [18 L.Ed. 2d 1178, 87 S.Ct. 1951]), "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. [Par.] Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent

intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice. [Citations.]" (See *People* v. *Washington, supra,* 62 Cal.2d 777, 781-782.)

Therefore, if petitioner were an accomplice to the robbery, he would be vicariously responsible[1] for any killing attributable to the intentional acts of his associates committed with conscious disregard for life, and likely to result in death. We must determine whether the committing magistrate had any rational ground for believing that Smith's death was attributable to intentional acts of Smith and Daniels meeting those criteria.

Petitioner relies upon the following language in *Washington,* wherein defendant's accomplice merely pointed a gun at the robbery victim who, without further provocation, shot and killed him: "In every robbery there is a possibility that the victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken as this case demonstrates. To impose an additional penalty for the killing would discriminate between robbers, *not on the basis of any difference in their own conduct,* but solely on the basis of the response by others that the robber's conduct happened to induce." (62 Cal.2d at p. 781; italics added.)

As indicated by the italicized words in the foregoing quotation, the central inquiry in determining criminal liability for a killing committed by a resisting victim or police officer is whether the *conduct* of a defendant or his accomplices was sufficiently provocative of lethal resistance to support a finding of implied malice. If the trier of fact concludes that under the particular circumstances of the instant case Smith's death proximately resulted from acts of petitioner's accomplices done with conscious disregard for human life, the natural consequences of which were dangerous to life, then petitioner may be convicted of first degree murder.[2]

For example, we pointed out in *Washington* that "Defendants who initiate gun battles may also be found guilty of murder if their victims resist and kill. Under such circumstances, 'the defendant, for a base, antisocial motive and with wanton disregard for human life, does an act that involves

---

[1] "Under the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice. To be so guilty, however, the accomplice must cause the death of another human being by an act committed in furtherance of the common design. [Citations.]" (*People* v. *Gilbert, supra,* 63 Cal.2d 690, 705.) Petitioner does not dispute that the conduct of his confederates set forth above was in furtherance of the robbery.

[2] See proposed instruction in *People* v. *Phillips,* 64 Cal.2d 574, 586-587 [51 Cal. Rptr. 225, 414 P.2d 353]. When murder has been established pursuant to the foregoing principles, Penal Code section 189 may be invoked to determine its degree. (*People* v. *Gilbert, supra,* 63 Cal.2d at p. 705.)

a high degree of probability that it will result in death' [citation], and it is unnecessary to imply malice by invoking the felony-murder doctrine." (62 Cal.2d at p. 782; see *People* v. *Gilbert, supra,* 63 Cal.2d at pp. 704-705.)

Petitioner contends that since neither Daniels nor Smith fired the first shot, they did not "initiate" the gun battle which led to Smith's death. However, depending upon the circumstances, a gun battle can be initiated by acts of provocation falling short of firing the first shot. Thus, in *People* v. *Reed,* 270 Cal.App.2d 37 [75 Cal.Rptr. 430] (hg. den.), defendant resisted the officers' commands to "put up your hands," and pointed his gun toward the officers and toward the kidnap-robbery victim. The officers commenced firing, wounding defendant and killing the victim. Although defendant did not fire a single shot, his murder conviction was upheld on the theory that his "aggressive actions" were sufficient evidence of implied malice, and that "[u]nder these circumstances it may be said that defendant initiated the gunplay . . . ." (270 Cal.App.2d at pp. 45-46.)

Similarly, in *Brooks* v. *Superior Court,* 239 Cal.App.2d 538 [48 Cal.Rptr. 762] (hg. den.), petitioner had directed "opprobrious language" to the arresting officer and had grasped the officer's shotgun. The officer, being startled and thinking that petitioner was trying to disarm him, yanked backwards and fired the gun, mortally wounding a fellow officer. In upholding an indictment for murder, the court concluded that under the circumstances, the petitioner's act of reaching for and grasping the officer's shotgun was "fraught with grave and inherent danger to human life," and therefore sufficient to raise an inference of malice. (239 Cal.App.2d at p. 540.)

In the instant case, the evidence at the preliminary hearing set forth above discloses acts of provocation on the part of Daniels and Smith from which the trier of facts could infer malice, including Daniels' coercive conduct toward Mr. West and his repeated threats of "execution," and Smith's intent and nervous apprehension as he held Mr. West at gunpoint. The foregoing conduct was sufficiently provocative of lethal resistance to lead a man of ordinary caution and prudence to conclude that Daniels and Smith "initiated" the gun battle, or that such conduct was done with conscious disregard for human life and with natural consequences dangerous to life.[3] Ac-

---

[3]Petitioner contends that we should ignore evidence regarding Smith's conduct, on the theory that Smith could not have been held responsible for his own death. We rejected a similar contention in *Washington,* stating that "A distinction based on the person killed, however, would make the defendant's criminal liability turn upon the markmanship of victims and policemen. A rule of law cannot reasonably be based on such a fortuitous circumstance. The basic issue therefore is whether a robber can be convicted of murder for the killing of *any* person by another who is resisting the robbery." (62 Cal.2d at p. 780, italics added.) Therefore, the trier of fact may find that Smith set into motion, through the intentional commission of acts constituting implied malice and in furtherance of the robbery, a gun battle resulting in his own

cordingly, we conclude that the evidence supported the magistrate's finding that reasonable and probable cause existed to charge petitioner with first degree murder.

The alternative writ heretofore issued is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., and Sullivan, J., concurred.

**PETERS, J.**—I dissent.

In holding that petitioner can be convicted of murder of John H. Smith, the majority repudiate this court's holdings in *People* v. *Washington,* 62 Cal.2d 777, 779-783 [44 Cal.Rptr. 442, 402 P.2d 130], and *People* v. *Gilbert,* 63 Cal.2d 690, 703-705 [47 Cal.Rptr. 909, 408 P.2d 365], that robbers cannot be convicted of murder for a killing by a victim unless the robbers commit malicious acts, in addition to the acts constituting the underlying felony, which demonstrate culpability beyond that of other robbers. The majority conveniently ignore the facts of *Gilbert* and its entire discussion concerning implied malice. They purport to distinguish *Washington* from the instant case, resulting in the absurd distinction that robbers who point guns at their victims without articulating the obvious threat inherent in such action cannot be convicted of murder for a killing committed by the victims, whereas robbers who point guns at their victims and articulate their threat can be convicted of murder in the same situation. To hold, as do the majority, that petitioner can be convicted of murder for acts which constitute a first degree robbery solely because the victims killed one of the robbers is in effect to reinstate the felony-murder rule in cases where the victim resists and kills.

In *Washington,* two robbers held up a service station. The owner, Carpenter, was in the office totaling up the receipts and disbursements while an employee was depositing the money in a vault in an adjoining room. Upon hearing someone yell "robbery," Carpenter opened his desk and took out a revolver. A few moments later one of the robbers, Ball, entered the office and pointed a revolver at Carpenter. Carpenter fired immediately, mortally wounding Ball. Washington, the accomplice, was con-

---

death. Since petitioner may be held vicariously responsible for *any* killing legally attributable to his accomplices, he may be charged with Smith's death.

The cases of *People* v. *Ferlin,* 203 Cal. 587, 597 [265 P. 230], *Woodruff* v. *Superior Court,* 237 Cal.App.2d 749, 750-751 [47 Cal.Rptr. 291], and *People* v. *Jennings,* 243 Cal.App.2d 324, 328-329 [52 Cal.Rptr. 329], are not apposite for they simply held that an accomplice cannot be charged with murder when his confederate accidentally kills himself while committing a felony. The courts in those cases were not faced with a situation involving the intentional commission of acts provoking lethal resistance by victims or police officers.

victed of the murder of Ball. We reversed the murder conviction. We held that the felony-murder doctrine could not be invoked to convict Washington of murder because the killing was not committed by Washington or his accomplice: "When a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate robbery." (62 Cal.2d at p. 781.)

We further stated that, apart from the felony-murder rule, a defendant may be guilty of murder on a vicarious liability theory for a killing committed by the victim: "Defendants who initiate gun battles may also be found guilty of murder if their victims resist and kill. Under such circumstances, 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death' (*People* v. *Thomas,* 41 Cal.2d 470, 480 . . . [concurring opinion]), and it is unnecessary to imply malice by invoking the felony-murder doctrine. To invoke the felony-murder doctrine to imply malice in such a case is unnecessary and overlooks the principles of criminal liability that should govern the responsibility of one person for a killing committed by another." (*Id.,* at p. 782; fn. omitted.)

In *Washington* the decedent-accomplice pointed a gun directly at the victim. If this court was of the opinion that a defendant in such a situation could properly be convicted of murder for the killing committed by the victim, it would have so stated and would have held that Washington could be so convicted of murder. Instead, it held that Washington could not be convicted of murder and mentioned only one case where defendants could properly be convicted of murder for a killing committed by the victim: the case where the defendants initiate the gun battle. Therefore, *Washington* stands for the proposition that the act of pointing a gun at the victim, unlike the act of initiating a gun battle, is *not* an act done " 'with wanton disregard for human life,' " involving " 'a high degree of probability that it will result in death' " from which malice can be implied. (See *id.*)[1]

---

[1]It is significant that *People* v. *Thomas, supra,* 41 Cal.2d 470, 480 (concurring opinion)—cited in *Washington* as a case enunciating the "implied malice" doctrine (62 Cal.2d at p. 782)—and the other cases enunciating this doctrine (e.g., *People* v. *Doyell,* 48 Cal. 85, 95; *People* v. *Torres,* 94 Cal.App.2d 146, 149-150 [210 P.2d 324]; *People* v. *Semone,* 140 Cal.App. 318, 323 [35 P.2d 379]; *People* v. *Hubbard,* 64 Cal. App. 27, 37-38 [220 P. 315]; *People* v. *Stein,* 23 Cal.App. 108, 114 [137 P. 271]; see Collings, *Negligent Murder—Some Stateside Footnotes to Director of Public Prosecutions* v. *Smith* (1961) 49 Cal.L.Rev. 254, 281-285, and cases cited) involved defendants who recklessly and with conscious disregard of human life had *fired a gun* or *struck a blow with a deadly weapon* directly at the victim or a group of which the victim was a member.

Moreover, *People* v. *Harrison,* 176 Cal.App.2d 330 [1 Cal.Rptr. 414]—cited by

The *Washington* rule as to when a defendant may be guilty of murder for a killing committed by the victim was followed in *People* v. *Gilbert, supra,* 63 Cal.2d 690. In that case, Gilbert and Weaver used guns to rob a bank, and King drove the getaway car. Gilbert shot and killed a policeman as he and Weaver were leaving the bank. Weaver was shot and killed by another policeman as they fled. King and Gilbert were convicted of first degree murder of both the policeman and Weaver. We reversed the convictions of murder of Weaver, which had been predicated on the felony-murder doctrine, but stated that on retrial the defendants might be found guilty of murder of Weaver *if Weaver was killed in response to a shooting initiated by Gilbert:* "In *People* v. *Washington,* 62 Cal.2d 777, 781-782 [44 Cal.Rptr. 442, 402 P.2d 130], we held that since the purpose of the common-law felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit, malice aforethought cannot be imputed under that rule unless a felon commits the killing. We recognized, however, that entirely apart from the felony-murder rule, malice may be established when a defendant initiates a gun battle, and that under such circumstances he may be convicted of murder for a killing committed by another. Although the evidence in the present case would support a conviction of first degree murder on the ground that Weaver was killed in response to a shooting initiated by Gilbert, the court did not instruct the jury on that ground, but gave an erroneous instruction that defendants could be convicted of murder for that killing without proof of malice and solely on the ground that they committed a robbery that was the proximate cause of their accomplice's death. This instruction withdrew from the jury the crucial issue of whether the shooting of Weaver was in response to the shooting of Davis or solely to prevent the robbery." (*Id.,* at pp. 703-704.) ·

Thus we recognized that King might be found guilty of murder of Weaver, but only because there was evidence that Weaver was killed in response to a shootout initiated by Gilbert. We then set forth the principles of criminal responsibility which had to be satisfied on retrial for King to be convicted of murder for the killing of Weaver: "(1) Proof of malice aforethought. . . . (2) The killing must be attributable to the act of the defendant or his accomplice. . . . (3) Vicarious criminal liability. . . ." (*Id.,* at pp. 704-705; italics deleted.) We discussed the first principle— proof of malice aforethought—as follows: " 'Murder is the unlawful killing of a human being, with malice aforethought.' (Pen Code, § 187.) Such malice is implied under Penal Code section 188 when the defendant or

this court in *Washington* as a case where it was unnecessary to imply malice by invoking the felony-murder doctrine (62 Cal.2d at p. 782, fn. 2)—involved a situation in which the shooting was initiated by one of the defendants.

his accomplice ' "for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death." ' (*People* v. *Washington,* 62 Cal.2d 777, 782 [44 Cal.Rptr. 442, 402 P.2d 130], quoting *People* v. *Thomas,* 41 Cal.2d 470, 480 [261 P.2d 1] [concurring opinion].) *Initiating a gun battle is such an act.*" (*Id.,* at p. 704; italics added.)

The majority do not contest the *Washington* holding that the defendant in that case could not be convicted of murder on a vicarious liability theory. However, they purport to distinguish that case simply by characterizing it as a case "wherein defendant's accomplice *merely* pointed a gun at the robbery victim who, *without further provocation,* shot and killed him. . . ." (Italics added.)

In *Washington,* a gun was pointed at the victim by a robber appearing suddenly in the victim's office; in the instant case, a gun was pointed at one of the victims and threatening language was used. The majority are making the incredible statement that because the robber in *Washington* did not articulate his obvious threat—because, in the majority's words, he "merely" pointed a gun at the victim—it cannot be said that he committed an act with conscious disregard for life and likely to result in death, whereas if he articulated his threat—as did the robbers in the instant case —his act could be found to have met such criteria.

To me, it is too obvious to dispute that inherent in the brandishing of a gun in a robbery is the conditional threat of the robber that he will use the gun if his demands are not complied with. The fact that the robber makes his threat express does not serve to distinguish *Washington.* It is unreasonable to assume that, just because the robber in *Washington* did not articulate his threat, the victim in that case had less reason to fear for his safety or, as the majority assert, less "provocation" for shooting the robber than did the victims in the instant case. It is absurd to suggest that the robber's acts in *Washington* were, as a matter of law, not "sufficiently provocative of lethal resistance to support a finding of implied malice," whereas the robbers' acts in the instant case could be so considered.

In sum, the articulation of threats does not without more show that the robber's acts were done " 'with wanton disregard for human life,' " involving " 'a high degree of probability that it will result in death' " from which malice can be implied. (See *People* v. *Washington, supra,* 62 Cal. 2d 777, 782; *People* v. *Gilbert, supra,* 63 Cal.2d 690, 704.) The difference between an implied and an express threat furnishes no significant basis for discrimination between robbers. To permit additional punishment for a homicide committed by the victim on the basis of the articulation of

the threats would deter robbery "haphazardly at best." (See *People* v. *Washington, supra,* 62 Cal.2d 777, 781.)

Moreover, the robbers in *Gilbert* expressly threatened to kill one of the robbery victims and in fact did kill a policeman, but we stated that they could be convicted of murder of Weaver only if it was found that they initiated the shooting which resulted in Weaver's death. Obviously, if this court in *Gilbert* was of the opinion that the act of threatening victims at gunpoint—which act was clearly involved in that case—could constitute a "malicious act," it would have sent the case back for retrial on the charge of Weaver's murder on that theory as well as on the theory that the shooting of Weaver was in response to shooting initiated by the robbers.

The majority in the instant case conveniently ignore this clear conflict between their opinion and *Gilbert.* In addition, when citing *Gilbert* as support for the proposition that petitioner can be convicted of murder on a vicarious liability theory, the majority set forth *Gilbert's* discussion of only two of the three principles of criminal responsibility that must be satisfied for a defendant to be convicted on such a theory—the principle that "[t]he killing must be attributable to the act of the defendant or his accomplice" and the principle of "[v]icarious criminal liability." (63 Cal. 2d at pp. 704-705; italics deleted.) They completely ignore *Gilbert's* discussion of the crucial principle of "[p]roof of malice aforethought" (italics deleted), including *Gilbert's* statement that "[i]nitiating a gun battle is such an act [from which malice can be implied]" and its failure to mention as being malicious the act of threatening victims at gunpoint despite the fact that the latter act was involved in that case.

Not only is the majority's holding contrary to the holdings and language of *Washington* and *Gilbert,* it is also contrary to the fundamental rationale of those cases—that the culpability of criminal defendants should be determined by their own acts, not by the fortuitous acts of their victims which are beyond the defendants' control and thus logically irrelevant to the defendants' culpability. In rejecting the contention that a purpose of the felony-murder rule is to prevent the commission of robberies, this court in *Washington* reasoned that whether robbers can be convicted of murder should not depend on the uncontrollable responses of their victims. "In every robbery there is a possibility that the victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken as this case demonstrates. To impose an additional penalty for the killing would discriminate between robbers, not on the basis of any difference in their own conduct, but solely on the basis of the response by others that the robber's conduct happened to induce. An additional penalty for a homicide committed by the victim would deter robbery haphazardly at best.

To 'prevent stealing, [the law] would do better to hang one thief in every thousand by lot.' (Holmes, The Common Law, p. 58.)" (62 Cal.2d at p. 781.)

In the instant case as in *Washington,* the robbers committed acts constituting a first degree robbery; they committed no additional acts—such as initiating a gun battle—that would reflect a culpability beyond that of any other first degree robbers and that would justify the additional charge of murder. As *Washington* stated, "[i]n every robbery there is a possibility that the victim will resist and kill," and robbers cannot be charged with murder for a killing by a victim unless they commit acts *in addition to those constituting a robbery* upon which additional acts a murder charge can be based. Any murder instruction in the instant case would be based solely on acts constituting first degree robbery. To convert such acts—i.e., to convert a first degree robbery—into murder solely because the victim killed one of the robbers is in effect to reinstitute the felony-murder doctrine in such a situation—contrary to the basic *Washington* holding that a defendant cannot be convicted of murder simply because he and his accomplices committed a felony in which a death resulted. In the instant case as in *Washington,* to impose an additional penalty on the defendant, not because of any independently malicious act (such as initiating a gun battle) by him or his accomplices, but because of the uncontrollable act of the victim who resists and kills is to "deter robbery haphazardly at best."

In conclusion, the majority have rejected the *Washington* holding.that robbers can be convicted of murder for a killing by a victim only if the robbers commit malicious acts, in addition to the acts which constitute the underlying felony, which demonstrate culpability beyond that of other robbers. By purporting to distinguish *Washington* from the instant case, the majority have set forth a new, wholly irrational, rule: if robbers point guns at the victims without articulating the obvious threat inherent in such action they cannot be convicted of murder for a killing committed by the victims, whereas if they articulate their threat they can be convicted of murder in the same situation. As we have seen, the majority's purported distinction of *Washington* makes absolutely no sense. In my opinion, it simply demonstrates a desire on the part of the majority to overrule *Washington sub silentio*.

*People* v. *Reed,* 270 Cal.App.2d 37 [75 Cal.Rptr. 430], is consistent with the views expressed in my dissent. In that case, defendant robbed and then kidnapped a gas station attendant, taking the attendant to an automobile in the station lot; two policemen arrived as defendant and the attendant were walking toward the automobile. As the attendant was seated in the automobile with defendant standing next to him beginning

to enter the car, the police officers called to defendant to halt and put up his hands; defendant responded by shaking his head in a negative manner and saying something that sounded like "no" and by pointing his gun at the head of the attendant and at one of the officers. The officers fired at defendant a number of times, wounding him and accidentally killing the attendant. The Court of Appeal affirmed defendant's murder conviction.

Thus *Reed* involved a hostage-type situation after the robbery. It is like the classic "shield" cases, in that the malice requirement is satisfied by the defendant's placing the victim in the "line of fire" and then aiming his gun at one of the officers. Placing the victim in this highly dangerous position after the robbery is itself a directly lethal act by the defendant independent of the robbery, from which malice can be implied. (See Morris, *The Felon's Responsibility for the Lethal Acts of Others,* 105 U.Pa. L.Rev. 50, 54.) In instructing the jury on implied malice, the trial court in *Reed* followed the precise language of *Washington* and *Gilbert:* " 'As used in connection with murder, "malice" may be implied when the killing results from an act done by the defendant involving a high degree of probability that it will result in death, which act is intentionally done for a base, antisocial motive and with wanton disregard for human life.' " (270 Cal.App.2d at p. 44.)

Although I am of the opinion that *Brooks* v. *Superior Court,* 239 Cal. App.2d 538 [48 Cal.Rptr. 762], was incorrectly decided under *Washington,*[2] it can be distinguished from *Washington* and from the instant case. As the Court of Appeal in *Brooks* noted, the petitioner "plainly saw" the officer carrying a loaded shotgun "with his finger on the trigger." (*Id.,* at p. 540.) Attempting to wrestle the gun from the officer under such circumstances, and especially during "the throes of a widespread and explosive riot," clearly involves a higher degree of probability of resulting in death than does an ordinary armed robbery; indeed, causing a gun to discharge by attempting to wrestle it from another is almost tantamount to shooting a gun one's self. Thus it can be held consistently with *Washington* that there was some evidence to support a finding of malice in *Brooks.*

In the instant case, Smith, the decedent-accomplice, pointed his gun at Mr. West, and Daniels said he had a gun and threatened to use it if the victims did not comply with the robbers' orders; Mrs. West then began to fire on Smith and Daniels. There was no attempt to use anyone as a "shield." As was the case in *Washington*—where this court held the "im-

---

[2]*Brooks'* petition for hearing to this court was denied. Justices Tobriner and Mosk and I were of the opinion that the petition should have been granted. (*Id.,* at p. 542.)

It should be noted that the Court of Appeal had issued writs of prohibition restraining the prosecution for murder of the other two occupants of Brooks' car. (*Lavine* v. *Superior Court,* 238 Cal.App.2d 540 [48 Cal.Rptr. 8].)

plied malice" theory to be inapplicable—it was the victim who fired the first shot; the shooting of Smith was to prevent the robbery and not in response to any shooting Smith had initiated.

It is absurd to suggest—as does the Attorney General—that to hold that petitioner is not chargeable with murder would be "to condemn the victims for not standing idly and waiting for some further action by the robbers. . . ." I am not "condemning" the victims in any way; I am adhering to the fundamental principle that the culpability of criminal defendants should be determined by their own acts—not by the fortuitous acts of their victims which are beyond the defendants' control and thus logically irrelevant to the defendants' culpability.

In sum, the instant case—like *Washington*—involves a typical first degree robbery situation without any independently malicious act by the robbers. In the instant case, a gun was pointed at one of the victims and threatening language was used; in *Washington*, a gun was pointed at the victim by a robber appearing suddenly in the victim's office. For such highly unsocial and unjustifiable conduct, appropriately harsh penalties have been allotted. (See, e.g., Pen. Code, § 213.) In each case, solely because the victim killed one of the robbers, the prosecutor attempts to charge the defendant with the additional count of murder. As this court stated in *Washington*, a robber has little control over the response of a victim and to impose an additional penalty when such uncontrollable response results in a death—to discriminate between robbers solely on the basis of the uncontrollable responses of their victims—would deter robbery haphazardly at best.

Since there is a total absence of evidence supporting the necessary element of malice aforethought, the information as to the count charging petitioner with murder of John H. Smith must be held invalid in the instant proceeding for a writ of prohibition. (E.g., *Roads* v. *Superior Court,* 275 Cal.App.2d 593, 597 [80 Cal.Rptr. 169], and cases cited.)

I would issue prohibition as to the murder count.

Tobriner, J., concurred.

**MOSK, J.**—I dissent.

While reserving my views on the soundness of the holding in *People* v. *Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130], I agree with Justice Peters that the factual distinction upon which the majority opinion in the present case is based is without legal significance.

In every robbery in which the criminal aims a gun at his victim as he

demands his money or property, the very act of pointing the weapon is an implied but unmistakable *conditional* threat that it will be used if the demands are not promptly met. Under the circumstances, such a deliberate gesture can have no other meaning. Nothing is added, therefore, when the robber makes the threat explicit by concluding his demands with the qualifying phrase, "or I'll shoot"—or any variation on that theme, e.g., "or I'll kill you," "or I'll blow your head off," "or we'll have an execution right here." The latter two formulations were used in the case at bar; dispassionately viewed, however, they are merely vigorous semantic descendants of the classic highwayman's command, "Your money or your life!" Dick Turpin's victims might be shocked by the graphic explicitness of contemporary intimidation, but they would easily recognize its traditional meaning.

Fundamental principles of criminal responsibility dictate that the defendant be subject to a greater penalty only when he has demonstrated a greater degree of culpability. To ignore that rule is at best to frustrate the deterrent purpose of punishment, and at worst to risk constitutional invalidation on the ground of invidious discrimination. We cannot, of course, ascribe such an intent to the Legislature. In my view, a robber who simply articulates one of the foregoing conditional threats is in no way more culpable than one who remains silent while brandishing a gun in his victim's face. The reason for this is apparent: every such conditional threat—whether express or implied—is inherent in the commission of the robbery itself. Indeed, the crime cannot be committed without making or carrying out a threat of violence: it is code law that "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, *accomplished by means of force or fear."* (Italics added; Pen. Code, § 211.) Fear is generated by the menace of such force, e.g., by a threat to commit personal violence upon the victim unless he complies with the robber's demands. The threat thus has no independent significance, no purpose other than to facilitate the commission of the robbery. It is, in short, a necessary incident of the crime.

In this regard the conditional threat is similar to the brief movements which virtually every robber finds it necessary to compel his victims to perform, such as going to the safe or cash register, lying on the floor, or entering a back room while the getaway is in progress. Yet in *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225], we recently held that the statute defining the crime of kidnaping to commit robbery was not intended to include robberies "in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." By the same token, the conditional threats uttered in the case at bar were merely incidental to the robbery and did not

substantially increase the risk of harm to the victims. I cannot square the present majority opinion with the spirit of our decision in *Daniels.*

This is not to maintain that no conduct short of actually pulling the trigger first will support a finding of implied malice aforethought. Thus the true disinction to be drawn in robbery cases is not between an express and an implied *conditional* threat, but between a conditional threat—whether express or implied—and an *unconditional* threat to kill. For example, after seizing the property the robber might voice an intent to shoot his victims on the spot to prevent their giving an alarm or later identifying him; or, being surprised by the police and having no hope of escape, a desperate criminal might announce that rather than surrender he will take his own life and that of his hostages as well. Manifestly such a threat greatly increases the risk of harm over and above that which is present in the usual robbery situation, and hence demonstrates a greater degree of culpability on the part of the wrongdoer. The consequences of creating this risk are likewise predictable: if one of the victims has access to a hidden weapon, he will be driven to use it in a last-ditch attempt to prevent his assailant from carrying out his unconditional threat to kill. Such a threat, accordingly, may fairly be said to "initiate" the ensuing gun battle just as surely as if the robber had been the first to fire.

Other examples appear in the cases: implied malice has been found, in effect, when the robber used his victim as a shield or hostage (cf. *People* v. *Reed* (1969) 270 Cal.App.2d 37 [75 Cal.Rptr. 430]) or committed some other highly reckless act such as pistol-whipping his victim with a loaded gun (In re Le Caille, Crim. 14525, petition for habeas corpus denied by minute order of May 27, 1970) or seizing the barrel of a shotgun held at the ready by a police officer (*Brooks* v. *Superior Court* (1966) 239 Cal.App.2d 538 [48 Cal.Rptr. 762]). These events substantially increased the risk of harm to all present, and may well be deemed "intentional acts . . . committed with conscious disregard for life, and likely to result in death." (Majority opinion, *ante*, p. 583)

To list such examples, however, is vividly to delineate the gulf between them and the traditional commands made in the course of the otherwise uneventful holdup. For the reasons stated, I conclude that a robber who articulates such conditional threats does not, by that act alone, engage in a greater degree of antisocial conduct than his more taciturn companions in arms, nor does he manifest implied malice aforethought as that concept has been defined in our decisions. For lack of that essential element, the murder charge against the defendants in the case at bar should fall.