[Crim. No. 26717. Second Dist., Div. Two. Dec. 9, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
ANTHONY VELASQUEZ, Defendant and Respondent.

**COUNSEL**

Joseph P. Busch, District Attorney, Harry B. Sondheim and George M. Palmer, Deputy District Attorneys, for Plaintiff and Appellant.

M. Allan Rosenthal for Defendant and Respondent.

**OPINION**

**BEACH, J.**—The People appeal from the order setting aside the information charging defendant and respondent Anthony Velasquez with murder.

FACTS:

An information filed on October 10, 1974, charged Anthony Velasquez with the murder of his brother, Rosalio Valdez Velasquez (Rosalio), in violation of section 187 of the Penal Code, and assault with a deadly weapon against a peace officer in violation of Penal Code section 245, subdivision (b).

Respondent entered a plea of not guilty. His motion pursuant to section 995 of the Penal Code was granted as to count I (murder) and denied as to count II (assault). The People are appealing from the court's ruling setting aside count I of the information charging respondent with the murder of his brother Rosalio.

According to testimony at the preliminary hearing, on August 17, 1974, at about 7 p.m., Deputy Sheriffs Donald Johnston and Abdullah Khardin were on patrol in a black and white sheriff's vehicle. At the intersection of Rosemead Boulevard and Rush Street, an unidentified woman approached their car and informed them of an altercation between an ice cream vendor and other unidentified persons. The deputies parked behind the ice cream truck and ascertained that there was no problem.

As the ice cream truck left the intersection, Deputy Johnston saw respondent walking along the curb. Respondent's walk was slow and deliberate, and he appeared to be staggering. Deputy Johnston suspected respondent of being under the influence of something, called him over and talked to him while Deputy Khardin looked on. Respondent's speech was slurred and he seemed slightly disoriented. No odor of alcohol was detected.

Deputy Johnston formed the opinion that respondent was drunk in violation of section 647, subdivision (f), of the Penal Code and placed him under arrest. Respondent protested his innocence while Deputy Johnston examined both his arms for presence of marks caused by illegal injections. Marks were present on both arms, including one or two marks indicating very recent injections. Deputy Johnston then informed respondent that he was also being arrested because of signs of narcotics use, and told him to place his hands on the hood of the patrol car.

Respondent indicated his intent not to cooperate by using profane and abusive words. Respondent stated he had just been released from jail,

that he did not intend to return, and that if he were to be arrested "he was going to go the hard way."

Respondent then placed his hands on the hood of the patrol car. As Deputy Johnston took out his handcuffs, respondent (who had been facing away from Johnston) swung around and struck him across the face with his right forearm. Respondent and Johnston struggled; Johnston was pushed up against a nearby fence.

Deputy Khardin came to Johnston's aid, trying to wrestle respondent away from Deputy Johnston and get him down on the ground to handcuff him. Respondent was striking both deputies in efforts to avoid being handcuffed.

At the same time Deputy Khardin observed respondent's brother Rosalio approaching, yelling "You are not going to arrest him," and other words to that effect. Rosalio entered the struggle, striking Deputy Johnston on the back of his head with his fist and jumping on his back. Deputy Khardin then moved around to Rosalio and tried to pull him away from Johnston. Rosalio then struck Deputy Khardin several times around the head trying to grab him and his clothing, reaching also for Khardin's baton.

Respondent was still fighting with Johnston and pinned the deputy between the patrol car and the curb; respondent sat on top of Johnston and repeatedly struck him, while trying to get the baton and gun away from the deputy. Respondent was successful in grabbing the baton, and used it to strike Johnston repeatedly.

Deputy Johnston remembered fighting with respondent and Rosalio, both of whom were using batons to strike him about the head and shoulders; struggling with respondent to keep his gun; and then losing consciousness. The next thing Johnston remembered is standing in the vicinity of the patrol car and seeing Rosalio lying prone on the ground.

After Deputy Khardin pulled Rosalio off Deputy Johnston, Rosalio turned on Khardin, trying to obtain both Khardin's baton and his gun. In the process, he struck Deputy Khardin repeatedly. Rosalio got the baton; Khardin was struck at least four times about the head with his own baton. Khardin recalled falling to the ground and losing consciousness briefly, then regaining consciousness to observe Rosalio with baton in hand running in the direction of respondent and Deputy Johnston, who were still fighting.

Khardin saw Rosalio and respondent both holding batons high over their heads, and bringing them down repeatedly in the direction of Deputy Johnston. Khardin removed his sheriff's revolver from his holster, pointed it at Rosalio and "began screaming at him to stop and drop the baton." Rosalio stopped to look at Khardin and yelled profanities at him.

* Khardin could see Rosalio and respondent surrounding Johnston. Johnston had neither baton nor gun out with which to protect himself. Respondent appeared to have his hands underneath Johnston's armpits, while Rosalio was striking Johnston about his head with the baton repeatedly. It appeared to Khardin that Johnston was being beaten severely. "I also observed my partner at this point with quite a bit of blood on his face and shirt and running out of his mouth . . . he appeared to have a very badly lacerated upper lip."

* Deputy Khardin again yelled at Rosalio and respondent to stop, drop the batons, move away from Johnston, and to freeze. Neither one responded. Deputy Khardin reached in the open window of the patrol car for the radio microphone. He could not reach the microphone from that position. Khardin pulled his gun out and held it just inside the open window of the driver's side of the car.

Khardin could not see Johnston's body at that time but he could see parts of both respondent and Rosalio. Both were still beating Johnston with the batons. He heard someone say (with a Spanish accent) "I will kill the son of a bitch." Rosalio paused and looked toward Khardin; he again used profane and abusive language toward Deputy Khardin and indicated he was not going to stop the beating. Khardin fired through the open window from the driver's side through the car, striking Rosalio in the chest area. Rosalio fell out of sight.

Khardin then picked up the microphone in the police unit and requested immediate assistance. He ran around the car and saw respondent crouching over Johnston, who was lying on the ground. Respondent was "fumbling" with Johnston's revolver attempting to pull the revolver out of the holster. Khardin yelled at respondent to move away from Johnston, up against a chain-link fence, and to place his hands in plain sight on the fence. Respondent stopped fumbling for the revolver and did as he was ordered.

Rosalio died from the gunshot wound.

APPELLANT'S CONTENTION ON APPEAL:

 There was sufficient proof of respondent's malice aforethought adduced at the preliminary hearing to justify holding respondent to answer for trial on the charge of murder; the trial court therefore erred in granting respondent's motion under section 995 of the Penal Code. We agree.

DISCUSSION:

Appellant contends that respondent's acts in provoking the situation that led to the shooting of Rosalio show actual or implied malice aforethought sufficient to establish the intent necessary for murder and that testimony at the preliminary hearing established a sufficient question of respondent's liability to hold respondent for trial.

 The sufficiency of proof required to maintain an information or indictment is not the scope and certainty of proof required to support a conviction. Evidence produced at a preliminary examination does not have to prove defendant guilty beyond a reasonable doubt. It is only required that "reasonable or probable cause" be shown that connects defendant with the offense, and makes it reasonable to believe that defendant could be legally guilty of the offense charged. (*Rideout* v. *Superior Court,* 67 Cal.2d 471 [62 Cal.Rptr. 581, 432 P.2d 197]; *Caughlin* v. *Superior Court,* 4 Cal.3d 461 [93 Cal.Rptr. 587, 482 P.2d 211]; *People* v. *Upton,* 257 Cal.App.2d 677 [65 Cal.Rptr. 103]; *Williams* v. *Superior Court,* 71 Cal.2d 1144 [80 Cal.Rptr. 747, 81 Cal.Rptr. 761, 458 P.2d 987]; *Frazzini* v. *Superior Court,* 7 Cal.App.3d 1005 [87 Cal.Rptr. 32].)

 In determining a motion to dismiss an information under Penal Code section 995, the trial court is bound by the rule that every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*People* v. *Roberts,* 26 Cal.App.3d 385 [103 Cal.Rptr. 25].) The magistrate or trial court judge is required only to weigh the evidence as a reasonable and prudent man, for some reasonable inference, not for an absolute conviction of the offense. If there is some evidence to support the information, the court will not look into its sufficiency at this time. (*People* v. *Poe,* 265 Cal.App.2d 385 [71 Cal.Rptr. 161].)

Malice, as defined in section 188 of the Penal Code, for purposes of murder, "may be express or implied. It is express when there is

manifested a deliberate intent unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

The conduct of respondent in initiating a fight with Deputies Johnston and Khardin may establish the requisite degree of implied malice. Both parties here have conceded that this is not a question of felony murder. ■ Although one may not be held under the felony-murder doctrine for the killing of an accomplice by a police officer (see *People* v. *Gilbert,* 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365]), that does not end our inquiry.

As the California Supreme Court noted recently in *People* v. *Antick,* 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43]: "[W]e have been careful to point out that this limitation upon the felony-murder doctrine does not shield a defendant from criminal liability for murder when the elements of the crime, a homicide plus malice, can be established without resort to this doctrine. ■ Thus, '[w]hen the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. . . . [T]he victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice.' " (*People* v. *Antick, supra,* at pp. 87-88. See also *People* v. *Gilbert, supra,* 63 Cal.2d at pp. 704-705; *Taylor* v. *Superior Court,* 3 Cal.3d 578, 587 [91 Cal.Rptr. 275, 477 P.2d 131]; *People* v. *Washington,* 62 Cal.2d 777, 780 [44 Cal.Rptr. 442, 402 P.2d 130].)

■ If Rosalio alone had caused his own death, under the holding of *Antick, supra,* he would not be chargeable with murder, and so respondent could not be charged with the homicide. But Rosalio did not bring about his own death in this sense. Respondent initiated the bloody and potentially lethal battle in the process of resisting arrest, and his deliberate acts in resisting arrest and in assaulting Deputy Johnston caused Deputy Khardin to react by shooting to kill in the performance of his duty, as well as defense of Johnston. Any person who initiates a battle

with deadly weapons in the course of committing another criminal · offense intentionally and with conscious disregard for life commits an act that is likely to cause death. Fists can be lethal weapons as well as batons and guns. The shooting of Rosalio was a reasonable and foreseeable response to the situation created by the intentional acts of respondent and Rosalio. (See *People* v. *Gilbert, supra* at p. 705.)

■ The People have raised the additional point that respondent would be guilty of murder through the theory of vicarious liability. We disagree. In *People* v. *Gilbert, supra,* at page 705, vicarious liability allows · that a defendant may be guilty of murder for a killing attributable to the act of his accomplice—if the accomplice caused the death of *another human being* by an act (or a reaction to an act) committed in furtherance of the common design. (See also *People* v. *Antick, supra,* at p. 88.) Rosalio provoked his own death, not that of another human being. Therefore, respondent could not be held for Rosalio's murder on the theory of vicarious liability.

The order setting aside the information as to the murder is reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied January 6, 1976, and respondent's petition for a hearing by the Supreme Court was denied February 5, 1976.