884

[Civ. No. 37663. First Dist., Div. Two. June 4, 1976.]

In re TYRONE B., a Person Coming Under the Juvenile Court Law.
WILLIAM MULLIGAN, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
TYRONE B., Defendant and Appellant.

**COUNSEL**

Benjamin R. Winslow, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and J. Patrick Collins, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROUSE, J.**—Tyrone B., a minor, appeals from an order committing him to the California Youth Authority after he was found guilty of

attempted armed robbery, in violation of sections 211a and 663 of the Penal Code; assault with intent to commit murder, in violation of section 217 of the Penal Code; and murder, in violation of section 187 of the Penal Code.

Appellant's sole contention on appeal is that the evidence was insufficient as a matter of law to support a finding that he was guilty of murder. We have concluded that this argument is without merit.

The evidence establishes that appellant spent the later afternoon and evening of January 6, 1975, with several companions. A considerable amount of alcohol was consumed and marijuana was smoked. During the course of the evening, one Tony F. broached the subject of robbery, stating that he had robbed a 7-11 Store in the past and wanted to do so again. The other members of the group attempted to talk Tony out of any such undertaking. However, Tony was not to be dissuaded, and at approximately 1 a.m. on the morning of January 7, appellant and two others, Bill F. and Terry G., agreed to help Tony rob a 7-11 Store in Santa Rosa. Bill produced a knife and a shovel handle which could be used as a club, and at approximately 2:30 a.m., the foursome drove to a bowling alley located near the 7-11 Store. At the bowling alley, the group finalized their robbery plans and agreed that Tony and another would enter the store, while the other two members of the group remained outside, one to stand near the store and act as a lookout and one to remain at the wheel of the getaway car. Of the two who were to enter the store, one was to threaten the clerk with the shovel handle and demand the money in the cash register, while the other was to take some beer and potato chips and, if necessary, threaten the clerk with the knife.

At approximately 3 a.m., the foursome parked near the 7-11 Store and Tony and appellant entered. Tony was armed with the shovel handle and appellant with the knife. Bill stationed himself outside the store and Terry remained at the wheel of the car.

James Book, the clerk on duty at the 7-11 Store, was alone at the time. He heard the enunciator doorbell ring and saw two males enter the store. Book testified that appellant walked past him and that the second individual (Tony) walked toward Book and raised a shovel handle over his head. Tony stated, "All right, we got you, mother fucker," and he then struck Book on the forehead with the shovel handle. Book was then seized from behind by appellant, who shoved Book into a display stand, striking a blow to the upper left side of Book's torso. Tony struck Book a

second time with the shovel handle, hitting him on the right shoulder, and appellant also continued to strike Book. Book was armed with a .22 pistol, and he testified that at this point, he was in fear of his life. He managed to remove the gun from his right pants pocket and fired in the direction of Tony's stomach just after Tony had struck him on the shoulder with the shovel handle. Tony then drew back the shovel handle to strike another blow, and Book fired a second round. Appellant and Tony then fled from the store.

Tony collapsed in the parking lot behind the store, and appellant, Bill and Terry left the scene in the getaway car. An autopsy of Tony's body revealed that death had been caused by a single bullet wound through his pulmonary artery and left lung. According to the pathologist, his death had in all probability occurred within five minutes after he was shot.

When the police arrived at the scene in response to Book's telephone call, Book was found to have sustained a deep jagged cut on his forehead and two stab wounds on his left back and side. Book testified that he had not noticed the knife in appellant's possession during the attempted robbery and that he was unaware that he had been stabbed until the police arrived and noticed the stab wounds.

Appellant, testifying on his own behalf, denied that his physical assault upon Book commenced prior to the firing of the first shot by Book. Appellant testified that he accompanied Tony into the 7-11 Store and walked directly to the rear of the store to get some beer. Appellant assumed that Tony could handle the clerk by threatening him with the shovel handle, and appellant therefore walked on past the clerk. When he was approximately a foot beyond the clerk and Tony, appellant heard a shot and he spun around, put his hand around Book's chest and shoulder and tried to push him into a display stand. Appellant then saw Tony grab his stomach and he heard the sound of a blow struck by Tony. Appellant then heard a second shot, and he and Tony fled from the store. Appellant admitted that he had the knife in his hand while he was attempting to push Book into the display stand, but he denied that he intentionally tried to stab Book. After he fled from the store and saw that the knife was still in his hand, it occurred to him that he might have stabbed Book.

In a statement given to the police following his arrest, appellant stated that he and Tony had reached the clerk at the same time. Appellant put

one arm around the clerk's neck and with the other hand held the knife against the clerk's kidneys. Appellant then heard two shots and pushed the knife into the clerk's right side. He did not recall how many times he stabbed the clerk.

Appellant contends that he could not have been found guilty of murder under the felony-murder doctrine because the application of that doctrine has been limited by our Supreme Court to those cases in which the actual killing is committed by the defendant or his accomplice. (*People* v. *Antick* (1975) 15 Cal.3d 79, 87 [123 Cal.Rptr. 475, 539 P.2d 43]; *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131]; *People* v. *Gilbert* (1965) 63 Cal.2d 690, 703 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Washington* (1965) 62 Cal.2d 777, 780 [44 Cal.Rptr. 442, 402 P.2d 130].) Appellant further contends that he could not be held responsible for the murder on a vicarious liability theory because such theory can be applied only where an accomplice caused the death of *another human being* and thus could be found guilty of murder himself. (*People* v. *Antick, supra,* at pp. 88-92; *People* v. *Taylor* (1974) 12 Cal.3d 686, 694-696 [117 Cal.Rptr. 70, 527 P.2d 622]; *People* v. *Gilbert, supra,* at p. 705; *Woodruff* v. *Superior Court* (1965) 237 Cal.App.2d 749, 751 [47 Cal.Rptr. 291]; *People* v. *Ferlin* (1928) 203 Cal. 587, 596-597 [265 P. 230].) Appellant argues that since Tony, the accomplice, was the sole cause of his own death at the hands of the victim, neither of the above theories can be applied and appellant must therefore be exonerated of the charge of murder.

The Attorney General concedes the correctness of appellant's contention that, as a matter of law, both the felony-murder doctrine and the theory of vicarious liability are inapplicable to the facts before us. However, reliance upon neither theory is necessary in this instance since there was evidence that appellant himself actively participated in the assault upon Book, which assault directly resulted in the killing of Tony. Where a defendant, with a conscious disregard for life, intentionally commits an act likely to cause death, and his victim kills in a reasonable response to such act, the defendant is guilty of murder. (*People* v. *Antick, supra,* at pp. 87-88; *People* v. *Gilbert, supra,* at pp. 704-705; *People* v. *Washington, supra,* at p. 782.) The Attorney General contends that since appellant engaged in precisely such conduct when he assaulted Book, the trial court properly found him guilty of Tony's murder.

The People's position is sound. In the recent case of *People* v. *Velasquez* (1975) 53 Cal.App.3d 547 [126 Cal.Rptr. 11], which is factually similar to this case, two deputy sheriffs attempted to arrest the defendant, and he forcibly resisted, striking both officers in an attempt to avoid being handcuffed. The defendant's brother then arrived on the scene and joined forces with the defendant. The two of them succeeded in obtaining the batons of both deputies and began beating the deputies severely. One of the deputies finally pulled his gun and fired in defense of his fellow officer, and the defendant's brother was shot and killed.

The trial court in the *Velasquez* case set aside an information charging the defendant with the murder of his brother, but this order was reversed on appeal. Although the appellate court correctly concluded that the defendant could not be convicted of murder under either the felony-murder doctrine or the theory of vicarious liability, the court held that the defendant's own conduct established all of the elements of the crime of murder. The court stated: "As the California Supreme Court noted recently in *People* v. *Antick,* 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43]: '[W]e have been careful to point out that this limitation upon the felony-murder doctrine does not shield a defendant from criminal liability for murder when the elements of the crime, a homicide plus malice, can be established without resort to this doctrine. Thus, "[w]hen the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. . . . [T]he victim's selfdefensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice." ' (*People* v. *Antick, supra,* at pp. 87-88. See also *People* v. *Gilbert, supra,* 63 Cal.2d at pp. 704-705; *Taylor* v. *Superior Court,* 3 Cal.3d 578, 587 [91 Cal.Rptr. 275, 477 P.2d 131]; *People* v. *Washington,* 62 Cal.2d 777, 780 [44 Cal.Rptr. 442, 402 P.2d 130].)

"If Rosalio alone had caused his own death, under the holding of *Antick, supra,* he would not be chargeable with murder, and so respondent could not be charged with the homicide. But Rosalio did not bring about his own death in this sense. Respondent initiated the bloody

and potentially lethal battle in the process of resisting arrest, and his deliberate acts in resisting arrest and in assaulting Deputy Johnston caused Deputy Khardin to react by shooting to kill in the performance of his duty, as well as defense of Johnston. Any person who initiates a battle with deadly weapons in the course of committing another criminal offense intentionally and with conscious disregard for life commits an act that is likely to cause death. Fists can be lethal weapons as well as batons and guns. The shooting of Rosalio was a reasonable and foreseeable response to the situation created by the intentional acts of respondent and Rosalio. (See *People* v. *Gilbert, supra,* at p. 705.)" (Pp. 554-555.)

The instant case is factually indistinguishable from *Velasquez.* The testimony of Book and the statement which appellant gave to the police show that appellant and Tony initiated a simultaneous assault upon Book and that appellant seized him from behind, shoved him and stabbed him with a knife while Tony beat him with the shovel handle. Such evidence substantially supports a finding that appellant intentionally and with conscious disregard for life committed acts which were likely to cause death and which, quite foreseeably, did in fact cause Book to defend himself by shooting and killing Tony. ▉ ▉▉▉ Accordingly, we conclude that the trial court correctly found appellant guilty of murder.[1]

The order committing appellant to the California Youth Authority is affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 28, 1976.

---

[1]It may be noted that at the conclusion of the trial, the trial court expressed the erroneous view that appellant could be found guilty of murder on a vicarious liability theory. However, the trial court did not indicate that its finding of guilt was based upon this theory alone. In any event, it is settled that a decision which is itself correct in law will not be disturbed on appeal merely because it was given for a wrong reason. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) Here, the trial court was correct in finding appellant guilty of murder, and it follows that such finding must be upheld.