[Crim. No. 32089. Second Dist., Div. Two. Sept. 18, 1978.]

In re MICHAEL T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL T., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Janice L. Feinstein, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—A juvenile Michael T. was declared to be a ward of the court pursuant to Welfare and Institutions Code section 602, based on the finding that he had committed the crimes of murder and attempting to intimidate a witness. He appeals contending that the evidence is insufficient to support the order.

Early in the evening of February 10, 1977, one of the two clerks at Dee's Liquor Store in Los Angeles shot a boy named Glenn Hester. Later that evening in retaliation Kenneth Ray Washington fatally shot one of the clerks in the back while the latter was standing at the rear of the store.

Shortly before the shooting two persons who were standing near the liquor store were warned by Michael to get out of the way because there was going to be a shooting at the liquor store. Both of these persons gave pretrial statements to this effect.

However, at trial one denied that Michael was the person who had spoken to him and the other stated that he could not be positive as to the identity of the minor because he was drunk at the time.

Later in the evening, Anthony Hemphill was at a dice game near the liquor store along with Kenneth Washington and others. At trial, Hemphill testified that Michael walked up to the game and either stated "We got the guy," or "We got his ass." Later at trial, Hemphill changed his testimony to say that what the minor had actually said was either "I got it," or "We got him."

Also that same evening Michael went to the home of a Miss Margaret Jones and asked if he could leave a gun at her house. After Michael had been at the house for almost 30 minutes, Washington arrived carrying a rifle under his coat. Miss Jones knew Michael but had never before seen Washington. Washington and Michael discussed the shooting at the liquor store and Michael stated "Man, we shot the wrong blood."

Michael then gave Miss Jones a handful of bullets and she supplied a cup as a container.

Miss Jones, in a taped interview with the police, stated that she heard both boys say that they had shot the man and that the shooting had occurred because another boy had been shot behind the ear and that they had shot the wrong person.

On April 11, 1977, Hemphill encountered Michael and later told a police investigator that at this meeting the minor had asked him why he was lying about him and threatened to kill him if he appeared in court. At trial, Hemphill testified that Michael had told him only to stay out of his way and not to tell any lies about him. Hemphill denied making any pretrial statement to the police and testified that Michael had not threatened him.

For the defense, two witnesses testified that at about 8 on the night of the shooting, Kenneth Washington came to the home of Daniel Bessick and was given the rifle and bullets by Bessick. About 25 minutes later Washington returned the rifle to Bessick.

Kenneth Washington's recorded pretrial statement to the police was admitted into evidence as a declaration against penal interest. In that statement, Washington related the procuring of the rifle, the shooting of the liquor store clerk and the return of the rifle. Washington also related that at the dice game, Michael informed him that he (Washington) had succeeded in shooting the victim and then Michael congratulated Washington.

The uncontroverted evidence is that Washington committed the murder. Aside from the statements attributed to Michael and his presence near the scene of the crime there is no evidence that Michael participated in the crime by rendering physical aid or as a conspirator.

■ A principal in the commission of a crime is one who directly commits the crime or who aids and abets the perpetrator. (Pen. Code, § 31.) In order for one to be charged as a principal for aiding and abetting it must be shown that he counseled, encouraged or assisted in the commission of a crime with knowledge that a crime was being committed. (*People* v. *Villa,* 156 Cal.App.2d 128 [318 P.2d 828]; *People* v. *Gonzales,* 4 Cal.App.3d 593 [84 Cal.Rptr. 863]; *People* v. *Belenger,* 222 Cal.App.2d 159 [34 Cal.Rptr. 918].)

Mere presence at the scene of a crime which does not itself assist its commission or mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting. (*People* v. *Weber,* 84 Cal.App.2d 126 [190 P.2d 46].)

The trial judge here made a tentative comment that Michael's remarks were possibly mere bravado in seeking peer approval. That observation appears to be a reasonable evaluation.

In any event we cannot find, in the statements attributed to Michael, proof beyond a reasonable doubt that he was admitting guilt for personal participation in the crime.

True, Michael's apparent attempt to identify with the slayer and his clearly expressed approval of the deed suggest an antisocial or delinquent orientation. Under the present state of the law, however, this is insufficient to support a declaration of wardship. (*In re R. C.,* 39 Cal.App.3d 887 [114 Cal.Rptr. 735].) He was not charged with being an accessory.[1]

We hold that, as a matter of law, the evidence here was insufficient to support a determination beyond a reasonable doubt that Michael was guilty of murder. (Compare *People* v. *Redmond,* 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Blakeslee,* 2 Cal.App.3d 831 [82 Cal.Rptr. 839].)

■ As to the finding that the minor was guilty of attempting to intimidate the witness Hemphill in violation of Penal Code section 136[2] we reach a different conclusion.

---

[1]Penal Code section 32 provides:

"Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

[2]Penal Code section 136 provides:

"(a) Every person who willfully and unlawfully prevents or dissuades any person who is or may become a witness, from attending upon any trial, proceeding, or inquiry, authorized by law, is guilty of a misdemeanor.

"(b) Every person who willfully and unlawfully prevents or dissuades by means of force or threats of unlawful injury to person or property, any person who is or may become a witness, from attending upon any trial, proceeding, or inquiry, authorized by law, is punishable by fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison or by both such fine and imprisonment in the county jail or in the state prison."

Hemphill made a pretrial statement to a police investigator that Michael had threatened to kill him if he (Hemphill) appeared as a witness. That statement was admitted into evidence without objection.

At the trial, Hemphill recanted to a degree. His version was simply that Michael had said "Don't tell no lie on him" or "Don't tell no law on him" or "Stay out of his way."

Coupling Hemphill's testimony with his previous statement to the police officer provides substantial evidence to support the trial court's finding that Michael did in fact attempt to improperly dissuade Hemphill from testifying.

The out-of-court statement to the officer was competent evidence of the fact that Michael had threatened to kill Hemphill if he testified. (Evid. Code, § 1235; *People* v. *Williams,* 22 Cal.App.3d 34 [99 Cal.Rptr. 103]; *People* v. *Collins,* 44 Cal.App.3d 617 [118 Cal.Rptr. 864].)

Furthermore, while we have held that Michael's statements were insufficient to support the finding, beyond a reasonable doubt, that he participated in the murder, the statements could be used by the trial judge and were probative in determining the issue of whether he threatened a witness.

The order is reversed with directions to the trial court to modify the order by deleting the finding on the murder allegation and to make a new order of disposition.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied October 10, 1978, and the petitions of both the parties for a hearing by the Supreme Court were denied November 15, 1978. Clark, J., was of the opinion that the respondent's petition should be granted.