Filed 9/28/21  P. v. Bowers CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B306429 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA153362 |
| DAVID DENETRIX BOWERS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge. Affirmed.

Cheryl Lutz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 1997, defendant David Denetrix Bowers entered a bank and tried to cash a fraudulent check. He was convicted of check forgery and possession of a check with intent to defraud and sentenced to a third-strike term of 25 years to life. After the electorate passed the Three Strikes Reform Act in 2012 (Proposition 36 or the Reform Act), defendant petitioned for recall of sentence and resentencing. The prosecutor opposed the petition, arguing that defendant was ineligible for relief based on a 1990 kidnapping conviction that qualified as a sexually violent felony under Proposition 36. The trial court agreed and found defendant ineligible by a preponderance of the evidence. Because the prosecution was required to prove defendant's ineligibility beyond a reasonable doubt, we reversed. On remand, the court again found defendant ineligible—this time beyond a reasonable doubt. On appeal from that order, defendant contends that conclusion is not supported by substantial evidence. We affirm the order.

# PROCEDURAL BACKGROUND

In 1990, in Contra Costa superior court case No. 901780-7, defendant was charged, together with three codefendants—Eric Billingsly, James Joyner, and Wayne McMahon—with oral copulation by threat and in concert (Pen. Code,[1] § 288a, subd. (d); count 3). Joyner was also charged with sodomy by force.

In December 1990, the information was amended to add a count for simple kidnapping against all four defendants. (§ 207, subd. (a); count 8). It appears the parties agreed that the

---

[1] All undesignated statutory references are to the Penal Code.

defendants would enter an open plea to the kidnapping charge,[2] the court would order the Department of Corrections and Rehabilitation to conduct a "diagnosis and recommendation" under section 1203.03, and the remaining counts would be dismissed. Defendant, Billingsly, and Joyner pled no contest to the kidnapping charge, and McMahon pled guilty. In May 1991, the court sentenced defendant to three years in state prison, suspended execution of that sentence, and placed him on three years' probation.

In 1997, in Los Angeles superior court case No. BA153362, a jury convicted defendant of forgery (§ 470, subd. (a); count 1) and possessing a check with intent to defraud (§ 475a; count 2). According to our opinion in his appeal from that conviction, at "a jury trial on the truth of the prior conviction allegations, the People presented the testimony of a case record specialist from the Department of Corrections and a fingerprint comparison expert which indicated Bowers had prior convictions of kidnapping in 1990 and robbery in 1992.

"During deliberations on the prior conviction allegations, one of the jurors presented a note which indicated the juror could not 'perform the task requested by you with regard to the alleged prior convictions of the defendant. I am opposed to the current Three Strikes law and do not believe that the conviction of forgery warrants the defendant's imprisonment for life.'

---

[2] There are two types of guilty or no contest pleas in California: a conditional plea, in which the plea is conditioned upon receipt of a particular disposition, and an unconditional or open plea, in which there is no agreement between the parties as to a particular sentence. (*People v. Holmes* (2004) 32 Cal.4th 432, 435.)

Numerous other jurors indicated they agreed with the sentiment expressed in the note. The trial court declared a mistrial.

"On December 10, 1997, while a jury panel waited to retry the prior conviction allegations, Bowers indicated he intended to admit both prior convictions 'for 25 to life. I want to go to prison.' The trial court inquired if Bowers was sure he wanted to follow that course. Bowers responded, 'I'm sure, positive.' The trial court told Bowers defense counsel wanted a jury trial. Bowers stated, 'No. Send me for 25 to life now, be through with it, come out on appeal whatever, 50 years, whatever. I'm tired of this.' Defense counsel indicated Bowers's stated intention was 'a hundred percent against my advice to my client. This is not what I want to do. I would like to do a trial on the priors. [¶] I'm not going to join him in the plea. … [¶] This is totally against my advice.' The trial court inquired if Bowers still wished to admit the prior conviction allegations and he answered, 'Yes. Admit both of them.' Bowers then admitted prior convictions of kidnapping in 1990 and robbery in 1992.

"At the time of sentencing, the trial court had before it the report of the probation officer which indicated 27-year-old Bowers had undergone a 90-day diagnostic evaluation after the kidnapping conviction in 1990, and thereafter had been granted probation. In 1992, Bowers was sentenced to 7 years in state prison for the robbery conviction. In July of 1996, Bowers was convicted of unlawful use of a weapon, a misdemeanor, in Missouri, and sentenced to 52 days in jail." (*People v. Bowers* (Mar. 26, 1999, B119661) [nonpub. opn.] [pp. 3–4] (*Bowers I*).)

The court denied defendant's motion to strike one of his prior convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and imposed a third-strike term of 25 years to life

4

in state prison for count 1. (*Bowers I, supra*, B119661 [pp. 2, 6].) The court imposed an identical concurrent sentence for count 2 and stayed that sentence under section 654. Defendant appealed, and we affirmed by unpublished opinion.

After Proposition 36 passed in 2012, defendant filed a petition seeking recall of his third-strike sentence and resentencing under the Reform Act. (*People v. Bowers* (Sept. 20, 2018, B282917) [nonpub. opn.] [p. 4].) The trial court issued an order to show cause why the petition should not be granted, and the prosecution filed an opposition arguing that defendant was ineligible for relief and unsuitable for resentencing. (*Ibid.*) After several years of delays attributable to defense counsel's 17 extension requests, on March 29, 2017, the court issued a written statement of decision in which it held by a preponderance of the evidence that defendant's prior kidnapping conviction was a sexually violent offense that rendered him ineligible for Proposition 36 relief. (*Ibid.*) The court reasoned that "[b]ecause there is no constitutional or statutory requirement that a disqualifying offense must be proven beyond a reasonable doubt, Evidence Code section 115 controls and [the court] only needs to find the existence of [defendant's] disqualifying offense by a preponderance of the evidence." (*Id.* [pp. 4–5].) We reversed by unpublished decision because the court applied the wrong burden of proof, and the error was not harmless. (*Id.* [p. 11].)

On remand, the court again found defendant ineligible for relief, this time beyond a reasonable doubt, because the kidnapping conviction was for a sexually violent offense.

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND

Matt J. joined the California Conservation Corps on February 15, 1990. McMahon was in his training class. After two weeks of training, Matt and McMahon were assigned to a center in the Bay Area, where they met Joyner, Billingsly, and defendant. Matt worked on the same brush-clearing crew as McMahon, Joyner, and Billingsly, and he spent time with McMahon and Joyner outside of work; he didn't spend much time with defendant.

On March 21, 1990, Matt went with the four defendants to a nearby shopping mall to drink some beer. Joyner and McMahon bought a couple of cases of beer at a Lucky supermarket, and the group headed to the side of the store to drink it. The side of the store is protected by trees, shrubbery, and a short brick wall but has a view of the parking lot. After about 15 minutes of drinking, the four defendants walked 20 or 30 steps away from Matt and conferred; Matt stayed behind. The defendants' behavior seemed strange.

After three or four minutes, Joyner called Matt over: "Matt, come here a minute." Billingsly stayed with Joyner. Defendant and McMahon walked back to the beer and resumed drinking. Joyner told Matt: "Get down on your knees. Suck Eric's dick." When Matt refused, Billingsly said, "If you don't get down and do it, I will hit you." Billingsly was much bigger than Matt.

Joyner walked back over to the other defendants while Matt got down on his knees as Billingsly pulled out his erect penis. Matt put his mouth on Billingsly's penis, then removed it, but Billingsly told him, "That wasn't long enough. Do it again." The oral copulation lasted three or four minutes; Billingsly didn't

6

ejaculate. Matt could see defendant and McMahon from where he was kneeling.

When Matt was done with Billingsly, Joyner walked back over to him and said, "Suck my dick." When Matt refused to orally copulate Joyner, Joyner unsheathed an 8" utility knife he carried on his belt and handed it to Billingsly.[3] Eric said, "If you don't do it, I will kill you." Matt complied.

Billingsly, Joyner, and Matt then returned to McMahon and defendant.[4] Matt asked for another beer, and Joyner handed him one.

At some point, the group walked around to the back of the Lucky store. The area behind Lucky slopes into a hill dotted with trees. Matt walked in the middle of the group; Joyner and Billingsly were in front, and McMahon and defendant were behind him. Matt carried his beer with him. Although nobody was holding on to him, Matt testified that "they made me go back there," and somebody said, "You're going to finish this job."

Once Matt had finished his beer, Billingsly told him, "Do it again." Matt complied. No one said anything while Matt was orally copulating Billingsly, but when he was done, McMahon started threatening him. McMahon said, "If you go back and tell anybody, I'm going to kill you." Matt walked over to defendant

---

[3] Matt later testified that Joyner had pulled out the knife earlier when Matt refused to orally copulate *Billingsly* and said, "If we have to use this, we will." Matt conceded that he wasn't exactly sure when the knife came out, but said it was definitely Joyner's knife, and Joyner definitely handed it to Eric.

[4] Joyner put the knife away at some point during this time, and Matt didn't see it again.

and McMahon and orally copulated one then the other. He did so because "they wanted it done."

At some point—the testimony is inconsistent as to when—McMahon said "let [Joyner] fuck you up your ass" and "if you don't do this, I will kill you." Matt complied.

Joyner then took Matt by the arm and guided him 20–30 feet away from the group, which remained behind Lucky. As they walked away, McMahon told Matt, "If you don't do him right, make him come, we'll kill you." Meanwhile, Joyner said that if Matt made him ejaculate, Joyner would make the others stop. While Matt orally copulated Joyner for the second time, the other three got up and walked back to the center.

When they were done, Joyner walked back to the center and Matt headed over to the mall to try to find a girl he was supposed to meet up with that night. When he saw that the mall was about to close, he ran to catch up with Joyner, and they walked back to the center together.

Meanwhile, the other three defendants were back at the center in defendant's dorm room, bragging to a coworker that Matt had just "sucked their dicks" and that they'd threatened him with violence to get him to do it. McMahon gave the longest description and said he had been slapping Matt back and forth "like a bitch." Defendant indicated there had been sexual conduct but did not say anything about using violence.

## DISCUSSION

Defendant contends there is no substantial evidence to support the court's conclusion that his kidnapping conviction was a sexually violent offense. We disagree.

1.    **Proposition 36**

" 'Under the Three Strikes law as originally enacted, a felony defendant who had been convicted of a single prior serious or violent felony (a second strike defendant) was to be sentenced to a term equal to "twice the term otherwise provided as punishment for the current felony conviction." [Citation.] By contrast, a defendant who had been convicted of two or more prior serious or violent felonies (a third strike defendant) was to be sentenced to "an indeterminate term of life imprisonment with a minimum term of" at least 25 years. [Citation.]' [Citation.] Thus, under the original law, a defendant previously convicted of two qualifying strikes was subject to a life term if he was subsequently convicted of *any* new felony, regardless of whether it was a serious or violent one." (*People v. Frierson* (2017) 4 Cal.5th 225, 230 (*Frierson*).)

Proposition 36 modified this sentencing scheme in two fundamental ways: First, the Reform Act operates prospectively by restricting life sentences to cases in which the current crime is a serious or violent felony or the prosecutor has pled and proved an enumerated qualifying factor. (§ 1170.12, subd. (c)(2).) Second, it applies retrospectively by creating a post-conviction resentencing procedure whereby an inmate serving a life sentence under the Three Strikes law for a crime that is no longer a third-strike trigger may petition to have his or her sentence recalled and to be resentenced as a second-strike offender. (§ 1170.126; *Frierson, supra,* 4 Cal.5th at pp. 230–231.)

The resentencing procedure requires the court to make two determinations. "First, an inmate must be eligible for resentencing. (§ 1170.126, subd. (e)(2).) An inmate is eligible for resentencing if his or her current sentence was not imposed for a

violent or serious felony *and* [he or she does not have a current or prior conviction] for any of the offenses described in clauses (i) to (iv) of section 1170.12, subdivision (c)(2)(C). (§ 1170.126, subd[s]. (e)(2), [(e)(3)].)" (*People v. Estrada* (2017) 3 Cal.5th 661, 667 (*Estrada*).) Those clauses describe certain kinds of criminal conduct, including a prior or current conviction for a "sexually violent offense," as defined by subdivision (b) of Welfare and Institutions Code section 6600.

"Second, an inmate must be suitable for resentencing. Even if eligible, a defendant is unsuitable for resentencing if 'the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (f).) If an inmate is found both eligible and suitable, the inmate's third strike sentence is recalled, and the inmate is resentenced to a second strike sentence. (*Ibid.*; § 1170.12, subd. (c)(1).)" (*Estrada, supra*, 3 Cal.5th at p. 667.)

A defendant seeking recall and resentencing under the Reform Act bears the initial burden of establishing that his third strike was not for a serious or violent felony. (*People v. Johnson* (2016) 1 Cal.App.5th 953, 963.) "Once that initial showing is made by the defendant, the prosecution bears the burden of proving that one of the ineligibility criteria applies." (*Frierson, supra*, 4 Cal.5th at p. 234.) The prosecution must prove ineligibility beyond a reasonable doubt. (*Id.* at pp. 230, 235–236.)

Here, defendant was sentenced in 1997 as a third striker when he was convicted of one count of forgery (§ 470, subd. (a)) and one count of possessing a check with intent to defraud (§ 475a). Neither crime is a serious or violent felony. (§ 1192.7, subd. (c) [serious felonies]; § 667.5, subd. (c) [violent felonies].) The prosecution argued that defendant was nevertheless

10

ineligible for the Reform Act's ameliorative provisions because his 1990 kidnapping conviction was a sexually violent offense. The court below agreed.

## 2.    Standard of Review

In assessing the sufficiency of the evidence to support a conviction, we review the entire record to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

Deference is not abdication, however, and substantial evidence is not synonymous with *any* evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 576–577.) " 'A decision supported by a mere scintilla of evidence need not be affirmed on appeal.' [Citation.] Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence." (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) Similarly, we "may not ... ' "go beyond inference and into the realm of speculation in order to find support for a judgment." ' " (*People v. Franklin* (2016) 248 Cal.App.4th 938, 947; *People v. Waidla* (2000) 22 Cal.4th 690, 735 [speculation is not evidence and cannot support a conviction].) Evidence that merely raises a strong suspicion of guilt is

11

insufficient to support a conviction. (*People v. Thompson* (1980) 27 Cal.3d 303, 324.)

## 3.     Substantial evidence supports the court's ruling.

Under section 1170.126, an inmate is ineligible for resentencing under the Reform Act if he has a prior conviction for any offense appearing in section 1170.12, subdivision (c)(2)(C)(iv). (§ 1170.126, subd. (e)(3).) Among the offenses listed in that subdivision is any *sexually violent offense* as defined by Welfare and Institutions Code section 6600. (§ 1170.12, subd. (c)(2)(C)(iv)(I).) As relevant here, kidnapping (§ 207) is a sexually violent offense if it is committed "by force, violence, duress, menace, [or] fear of immediate and unlawful bodily injury on the victim or any other person" *and* is committed with the intent to commit sodomy (§ 286) or oral copulation (§ 288a). (Welf. & Inst. Code, § 6600, subd. (b).) That is, the kidnapping must be committed by force or violence *and* the kidnapping must be committed with the intent to commit an enumerated sex offense.[5]

---

[5] Although force or fear is an element of kidnapping, proof of that element is not necessarily sufficient to satisfy the requirement in Welfare and Institutions Code section 6600, subdivision (b), that the kidnapping be committed "by force, violence, duress, menace, [or] fear of immediate and unlawful bodily injury … ." That is, section 6600 requires a specific type of fear—"fear of immediate and lawful bodily injury"—whereas kidnapping does not. (See, e.g., *People v. Majors* (2004) 33 Cal.4th 321, 331 [implicit but false threat of arrest may satisfy the force or fear element of kidnapping]; *People v. Cook* (2017) 8 Cal.App.5th 309 [elements of the offense of assault with intent to commit rape, standing alone, are insufficient to satisfy requirements of Welf. & Inst. Code, § 6600, subd. (b), for Prop. 36 purposes]; *People v. Jernigan* (2014) 227 Cal.App.4th 1198 [same; attempt to commit forcible oral copulation].)

The record is unclear about defendant's precise role in the events. Certainly, as defendant argues, there is little evidence that he personally used the type of heightened force required to elevate the kidnapping to a sexually violent offense. Matt testified that defendant never explicitly or implicitly threatened him; the threats came from Billingsly and McMahon.[6] Nor had defendant made any comments in the past that could be construed as threats; of the men in the group, Matt knew defendant the least well. Nevertheless, as the court below noted, defendant need not have personally used force or violence: He may also be guilty as an aider and abettor.

To establish a defendant's liability as an aider and abettor, the prosecution must first prove that a crime was committed. (*People v. Perez* (2005) 35 Cal.4th 1219, 1227.) Then, it must prove: (1) the defendant knew the perpetrator intended to commit the crime; (2) before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and (3) the defendant's words or conduct *did in fact* aid and abet the perpetrator's commission of the crime. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069, overruled in part on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216; see also Pen. Code, § 31; CALCRIM No. 401.) Here, there is no dispute that Billingsly and Joyner committed a sexually violent kidnapping. The question is whether defendant's words or actions *actually* aided and abetted that sexually violent kidnapping.

Whether a defendant acted as an aider and abettor is judged under the totality of the circumstances. (*People v. Morga*

---

[6] Matt's testimony was inconsistent as to whether Joyner also threatened him but was unambiguous that defendant did not.

13

(1969) 273 Cal.App.2d 200, 207.) "Mere presence at the scene of a crime is not sufficient to constitute aiding and abetting, nor is the failure to take action to prevent a crime … ." (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 529–530.) Likewise, a defendant's presence in the offender's company before or after the crime does not establish liability as an aider and abettor. (See *People v. Hill* (1946) 77 Cal.App.2d 287, 289, 292–294.) Nevertheless, "presence at the crime scene, companionship, and conduct before and after the offense" are factors that "may be considered in determining aiding and abetting" liability. (*In re Juan G.* (2003) 112 Cal.App.4th 1, 5.)

Nor is it sufficient that a defendant knows in advance what the perpetrator plans to do. (*People v. Horton* (1995) 11 Cal.4th 1068, 1115 ["knowledge that a crime might be committed by defendant in the future did not amount to aiding and abetting the commission of that prospective crime"]; *In re Michael T.* (1978) 84 Cal.App.3d 907, 911 ["Mere presence at the scene of a crime which does not itself assist its commission or mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."].) The prosecution must also prove that the aider and abettor "does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of" the target offense. (CALCRIM No. 401.)

Thus, the issue before us is whether there is substantial evidence that defendant took any substantive action in furtherance of the sexually violent kidnapping. We conclude there is.

The preliminary hearing transcript established that after the four defendants walked off and talked amongst themselves, Joyner or Billingsly called Matt over, and defendant returned

14

with McMahon to where they had been drinking beer. When Billingsly pulled his penis out of his pants, it was already erect, which supports an inference that the four defendants had discussed their plan during the meeting. In addition, Matt told police that when Joyner and Billingsly were trying to get Matt to comply with their initial demands, McMahon and defendant were shouting at Matt to do it.

Then, when the group headed to the back of the supermarket, all four defendants surrounded Matt and made him walk with them. Defendant was in the back of the scrum, preventing Matt from escaping towards the parking lot.[7] Finally, although "it was the others that were making [Matt] do it, the other three," Matt testified that he orally copulated defendant because defendant said, "do it to me," and he "wanted it done."

Taken together, although the evidence was sometimes conflicting, and defendant's precise role is not entirely clear, under the required standard of review, this evidence is sufficient to support the conclusion that defendant did "in fact, aid, facilitate, promote, encourage, or instigate" the other defendants' crime of kidnapping by force for the purpose of oral copulation. (CALCRIM No. 401.)

---

[7] Indeed, Matt testified that he couldn't flee when Billingsly first demanded oral sex because defendant and McMahon would have stopped him.

## DISPOSITION

The order is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



                                                    LAVIN, J.

WE CONCUR:



EDMON, P. J.



EGERTON, J.