Filed 2/17/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. K.M., Defendant and Appellant. | A159962 (San Mateo County Superior Ct. No. 20-JW-0173 / Santa Clara County Superior Ct. No. JV44059A) |

The juvenile court determined that Kevin M. aided and abetted a second degree robbery involving a cell phone, a felony. He contends that the court's conclusion is not supported by sufficient evidence. We agree, and we therefore reverse the judgment.

## BACKGROUND

### A.

The People filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) alleging that Kevin, who was 15 at the time, committed second-degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) by taking a cell phone from the victim by means of force or fear. The Santa Clara County juvenile court sustained the petition, finding that Kevin had aided and abetted the robbery. (See *People v. Perez* (2005) 35 Cal.4th 1219, 1225 (*Perez*) [a person may be found liable of a crime either as a direct perpetrator or as one who aided and abetted a direct perpetrator].) After the case was transferred to San Mateo

1

County for disposition, the court continued Kevin as a ward of the court,[1] ordered him to serve 120 days therapeutic detention in juvenile hall, and placed him on probation in his parents' home.

## B.

On the day of the incident, the victim was listening to his AirPod earphones and looking at his cell phone while walking back to his office after picking up his lunch. He saw five individuals with bicycles who were outside of a 7-Eleven. A few minutes later, someone tapped him on one side while another individual, who was on a bicycle, passed him on the other side and grabbed his cell phone out of his hand. The victim ran after the person who took his phone and tackled him to the ground. After the victim released the thief, someone punched the victim in the face. At that point, the victim noticed he was surrounded by three individuals in black hoodies, one of whom was behind him. The victim could hear yelling all around him, along the lines of "you hurt my friend, we're going to hurt you." He felt "[v]ery intimidated." One of the individuals demanded his AirPods, but the victim refused to hand them over and backed up toward his office. When the victim's boss arrived on the scene, the three individuals rode away on bicycles.

The police arrested three minors with bicycles shortly thereafter: Kevin, along with two youths named Angel and Armando. When they were arrested, Angel had the victim's cell phone in his backpack.

A short while later, the police drove the victim to the location where Kevin, Angel, and Armando were detained. The victim identified Angel as the person who took his phone, and he identified Armando as the person who punched him and demanded his AirPods. The victim had trouble identifying Kevin. He told the police that he did not know if Kevin was the person

---

[1] Kevin had previously been declared a ward of the juvenile court based on a separate wardship petition.

who tapped him; he said Kevin could be that person but he was not sure.

### C.

At the hearing, the victim identified Kevin in court. The victim recalled seeing Kevin in the group of people at the 7-Eleven shortly before the incident although the victim "did not have enough time to stare at him that long." The victim also recalled Kevin was one of the people who yelled at him after he stood up from tackling Angel.

The victim otherwise had no clear memory of Kevin. He did not know whether Kevin was there when his phone was taken; he had not seen Kevin at that point. Kevin could have been the person who tapped him or the person who punched him, but he was not sure. It was possible that Armando was the one who punched him or tapped him. According to the victim, he could "remember the chain of events clearly but, obviously, the small details [are] not what I was paying attention to at the time."

### DISCUSSION

### A.

Liability for aiding and abetting requires "proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*Perez*, *supra*, 35 Cal.4th at p. 1225.) Kevin does not dispute the first element—Angel's robbery of the cell phone.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) For a specific intent crime such as robbery,

3

the aider and abettor must " 'know[] the full extent of the perpetrator's criminal purpose and give[] aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' " (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.)

We review the entire record in the light most favorable to the judgment below and may reverse "only if ' "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the [judgment]].' " ' " (*People v. Sanford* (2017) 11 Cal.App.5th 84, 91 (*Sanford*).) Substantial evidence is evidence that is " 'solid, substantial, and . . . reasonably inspire[s] confidence" that the accused committed the charged crime. (*People v. Lara* (2017) 9 Cal.App.5th 296, 320 (*Lara*).) We " ' "presume in support of the judgment the existence of every fact the [fact finder] could reasonably have deduced from the evidence." ' " (*Sanford, supra*, at p. 91.) At the same time, " ' " '[a] finding of fact must be an inference drawn from evidence rather than ... a mere speculation as to probabilities without evidence.' " ' " (*Id.* at p. 92.) To affirm, "we must be able to conclude the evidence is sufficient to have convinced" a rational fact finder of each element of the crime "beyond a reasonable doubt." (*Lara, supra*, at p. 320.)

## B.

Kevin contends that the evidence was insufficient to establish that he had knowledge of Angel's intent to steal the cell phone; that he had the intent to assist in the robbery of the cell phone; or that he took any action to aid or encourage the robbery of the cell phone.

## 1.

We shall assume that there was sufficient evidence on the first two issues—knowledge and intent—although we note that the evidence is thin at best. There was no direct evidence that Kevin was aware that Angel had taken the phone, knew in

4

advance that he would do so, or intended to help Angel commit the robbery.

To be sure, circumstantial evidence and reasonable inferences may be sufficient to establish a defendant's guilt. Kevin's presence at the scene, his association with Angel before and after the robbery, and his flight from the scene are relevant to the fact finder's inquiry. (*Lara*, *supra*, 9 Cal.App.5th at pp. 322-323; *In re Juan G.* (2003) 112 Cal.App.4th 1, 5 (*Juan G.*).) Given the circumstantial evidence here, we might suspect Kevin knew what Angel intended to do. But a suspicion—even a strong suspicion—is not evidence and cannot support factual inferences. (See *People v. Thompson* (1980) 27 Cal.3d 303, 324, disapproved on another ground in *People v. Rowland* (1992) 4 Cal.4th 238, 260; *Lara*, *supra*, at p. 319 [the defendant's presence at the scene, failure to take action, association with perpetrators, flight from the crime, and lies to police raised only a suspicion of aiding and abetting a murder].)

We need not resolve whether sufficient evidence supports the knowledge and intent elements. It is more fruitful to focus on whether there is substantial evidence that Kevin took any action to aid or encourage Angel's robbery of the cell phone.

**2.**

The record does not support a finding that Kevin aided or encouraged Angel's robbery of the cell phone.

As our Supreme Court recently emphasized, liability for aiding and abetting " '*require[s] some affirmative action*' " that assists or encourages the commission of the crime. (*People v. Partee* (2020) 8 Cal.5th 860, 868 (*Partee*).) A person present at the scene of a crime—even one who is the criminal's companion, knows a crime is being committed, fails to prevent it, and later expresses approval of it—is not guilty of aiding and abetting the crime if he takes no action to aid or encourage the crime. (*In re Michael T.* (1978) 84 Cal.App.3d 907, 910-911; see also, e.g., *Juan*

*H. v. Allen* (9th Cir. 2005) 408 F.3d 1262, 1278-1279 [evidence of aiding and abetting murder and attempted murder was insufficient where minor merely stood unarmed behind his older brother after his home was attacked, even if he knew his brother was armed with a deadly weapon].)

Here, the victim could only guess what actions Kevin may have taken because "it happened pretty quick," the victim was "obviously, slightly flustered," and the details were "blurry" in his mind. The victim testified that Kevin "could have" been the minor who punched him "but I'm not too sure about that"; Kevin could have been the minor who tapped him just before Angel grabbed his phone, but the victim could not "say that with confidence." Such speculation falls short of substantial evidence. (See *Jones v. McFarland Co-op Gin, Inc.* (1965) 237 Cal.App.2d 94, 98 ["Inferences drawn from such equivocal testimony are not based on substantial evidence"].)

At most, there was substantial evidence that Kevin stood behind the victim and yelled "you hurt my friend, we're going to hurt you." But there was no nexus between this action and the crime—the theft of the phone. The yelling occurred *after* Angel had taken the phone and the victim had tackled and released him. There was no evidence that the victim then tried to regain possession of the phone, much less that the yelling dissuaded him from doing so. (Cf. *People v. Estes* (1983) 147 Cal.App.3d 23, 27-29 [robbery may include force or fear used to maintain possession of the stolen property from a person attempting to recover it].)

The People contend that Kevin's actions helped Angel escape, since the robbery was not complete until Angel reached a place of temporary safety. But the three minors' yelling at the victim only *delayed* the escape. Whatever the yelling accomplished, it did not help Angel get away. Indeed, the victim testified that he was "trying to slow the process down" because he knew his boss would be able to see what was happening from his office and potentially come help. The People do not argue, nor

6

was there any evidence, that Kevin blocked the victim's movements; instead, the victim testified that he was able to cross to the other side of the street and walk toward his office.

The juvenile court relied in part on evidence that, during the yelling, Armando demanded the victim's AirPods. This was error. Kevin was not charged with attempted robbery of the AirPods. Evidence that a person aided one crime cannot substitute for evidence that the person aided a different crime. (See *Lara*, *supra*, 9 Cal.App.5th at pp. 322-323 [evidence that defendants robbed the victim did not establish that they aided and abetted the victim's murder by their companions].)

The People mistakenly rely on *Juan G.*, *supra*, 112 Cal.App.4th at pp. 5-6. In that case, the defendant and his companion approached the victim and stood side-by-side while the companion drew a knife and demanded money. (*Ibid.*) The defendant aided the robbery by directly confronting the victim and standing "within touching distance," thereby helping to intimidate the victim while his companion took the money. (*Id.*, at p. 5.) The victim here did not even see Kevin when Angel snatched his phone.

The People also cite *In re Lynette G.* (1976) 54 Cal.App.3d 1087 (*Lynette G.*). There, the accused minor stood five feet away during a robbery, fled with her companions when the victim started yelling, and was later arrested in the company of her companions. (*Id.* at pp. 1090-1092, 1095.) One justice dissented, asserting in part that "Lynette committed no overt act during the robbery which could be interpreted as aiding or lending any encouragement to the perpetrator of the robbery." (*Id.* at p. 1101 (dis. opn. of Jefferson, J.).) The majority did not identify any act by the minor that aided or abetted the robbery.

We agree with the dissent in *Lynette G.* Aiding and abetting requires an affirmative action that assists or encourages the crime. (*Partee*, *supra*, 8 Cal.5th at p. 868.) The People

7

identify no plausible action here, and we have found none. Accordingly, the evidence was insufficient to persuade a reasonable trier fact that the elements of aiding and abetting a robbery were satisfied beyond a reasonable doubt. (*Lara, supra*, 9 Cal.App.5th at p. 320.)

In light of our conclusion, we do not reach Kevin's other contentions on appeal.[2]

### DISPOSITION

The judgment is reversed.

---

[2] In a separate petition for writ of habeas corpus, case No. A162467, Kevin challenges the competency of his trial counsel. In light of our resolution of this appeal, we have dismissed that petition by separate order filed this date.

_____
BURNS, J.

We concur:

_____
JACKSON, P.J.

_____
NEEDHAM, J.

A159962

San Mateo County Superior Court Case No. 20-JW-0173; Santa Clara County Superior Court Case No. JV44059A.  The Honorable Susan I. Etezadi and The Honorable Katherine Lucero, Trial Court Judges.

Amanda K. Roze, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Rene A. Chacon, Supervising Deputy Attorney General, and Julia Y. Je, Deputy Attorney General, for Plaintiff and Respondent.